IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |  |
|---|---|---|
| TONIA TIPPINS, *et al*., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 18-923C |
| v. | ) | Judge David A. Tapp |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S APPENDIX ACCOMPANYING CROSS-MOTION FOR SUMMARY JUDGMENT AND RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

| **Description** | **Pages** |
|---|---|

1.  Defendant's Response to Plaintiffs' First Set of Interrogatories ................................... 1-15

    a.  Interrogatory Answers ...................................................................... 1-10

    b.  Verifications.................................................................................. 11-13

2.  Excerpts of Certified Administrative Record in *Tippins* ............................................ 16-60

    a.  Certification of the Administrative Record............................................16

    b.  Secretary's 2011 CRSP Memorandum ............................................. 17-18

    c.  2011 CRSP Precept................................................................... 19-31

    d.  Secretary's 2012 CRSP Memorandum ............................................. 32-33

    e.  2012 CRSP Precept................................................................... 34-46

    f.  Secretary's 2013 CRSP Memorandum ............................................. 47-48

    g.  2013 CRSP Precept................................................................... 49-52

    h.  Secretary's 2014 CRSP Memorandum ............................................. 53-54

    i.  2014 CRSP Precept................................................................... 55-58

    j.  Coast Guard Decision Not To Hold 2015 CRSP ............................... 59-60

3.  Declaration of Captain Christopher P. Calhoun ....................................................... 61-63

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

Of Counsel:

BRIAN JUDGE
Chief

LCDR JUSTIN R. JOLLEY
Deputy Chief

Office of Claims & Litigation
United States Coast Guard
2703 Martin Luther King Jr. Ave SE
Washington, D.C.  20593-7213

January 29, 2021

 s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

 s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-9303

Attorneys for Defendant

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

|  |  |
|---|---|
| TONIA TIPPINS, *et al.*, | )<br>)<br>) |
| Plaintiffs, | ) |
| v. | )    No. 18-923C<br>)    Judge David A. Tapp |
| THE UNITED STATES, | )<br>) |
| Defendant. | )<br>) |

<u>DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES</u>

Pursuant to Rules 26 and 33 of the Court's Rules, defendant, the United States, hereby responds to plaintiffs' first set of interrogatories dated August 28, 2020. The following response is based upon defendant's current knowledge, information, and belief, after making reasonable inquiry. Defendant reserves the right to modify or supplement its response as further information becomes available through discovery or otherwise.

<u>INTERROGATORY NO. 1:</u>  If your response to Request for Admission No. 1 is anything other than "admit," describe in detail any "reduction in force" authorized by the Secretary prior to 2010.

<u>OBJECTION</u>: Defendant objects that this interrogatory is overbroad and unduly burdensome, insofar as it calls for information "prior to 2010," because it does not establish the beginning of the relevant timeframe and potentially calls for information going back to 1791. Defendant's answer construes this interrogatory as having a reasonable timeframe from December 19, 1991 (the date of enactment of the relevant statute), through December 2009. Defendant also objects that this interrogatory is overbroad and unduly burdensome insofar as it calls for information that is not readily available in existing Coast Guard records. Defendant's answer provides responsive information to the extent that it is readily available.

<u>ANSWER</u>:    Subject to and without waiving these objections, defendant answers interrogatory number 1 as follows:

a.    Given the passage of time, it is not known with certainty whether the Secretary of Transportation ordered reductions in force under 14 U.S.C. § 357(j), or whether the Coast Guard

used other workforce shaping tools, to reduce the authorized number of enlisted billets and the actual number of enlisted service members, from the end of fiscal year 1991 through the end of fiscal year 1996.

b.      The Coast Guard reduced the authorized number of enlisted billets from the end of fiscal year 1991 through the end of fiscal year 1996, as follows:  September 1991 (30,556 enlisted billets); September 1992 (30,149 enlisted billets); September 1993 (29,502 enlisted billets); September 1994 (29,004 enlisted billets); September 1995 (28,618 enlisted billets); and September 1996 (27,739 enlisted billets).  Accordingly, there was a reduction of 2,817 enlisted billets authorized from the end of fiscal year 1991 through the end of fiscal year 1996.  The figures in this paragraph represent the Coast Guard's contemporaneous judgment regarding the number of billets that the agency could afford to maintain and authorize at the time in light of current and anticipated budget constraints and competing funding priorities.

c.      The Coast Guard reduced the actual number of enlisted service members from the end of fiscal year 1991 through the end of fiscal year 1996, as follows:  September 1991 (30,285 enlisted members); September 1992 (30,918 enlisted members); September 1993 (30,699 enlisted members); September 1994 (29,002 enlisted members); September 1995 (28,401 enlisted members); and September 1996 (27,129 enlisted members).  Accordingly, there was a reduction of 3,156 enlisted service members from the end of fiscal year 1991 through the end of fiscal year 1996.

INTERROGATORY NO. 2:  If your response to Request for Admission No. 2 is anything other than "admit," describe in detail any "reduction in force" carried out by the Coast Guard prior to 2010.

OBJECTION: Defendant objects that this interrogatory is overbroad and unduly burdensome insofar as it calls for information "prior to 2010" because it does not establish the beginning of the relevant timeframe and potentially calls for information going back to 1791. Defendant's answer construes this interrogatory as having a reasonable timeframe from December 19, 1991 (the date of enactment of the relevant statute), through December 2009.

Defendant also objects that this interrogatory is overbroad and unduly burdensome insofar as it calls for information that is not readily available in existing Coast Guard records. Defendant's answer provides responsive information to the extent that it is readily available.

ANSWER:    Subject to and without waiving these objections, defendant answers interrogatory number 2 as follows:

a.    Given the passage of time, it is not known with certainty whether the Secretary of Transportation ordered reductions in force under 14 U.S.C. § 357(j), or whether the Coast Guard used other workforce shaping tools, to reduce the authorized number of enlisted billets and the actual number of enlisted service members, from the end of fiscal year 1991 through the end of fiscal year 1996.

b.    The Coast Guard reduced the authorized number of enlisted billets from the end of fiscal year 1991 through the end of fiscal year 1996, as follows: September 1991 (30,556 enlisted billets); September 1992 (30,149 enlisted billets); September 1993 (29,502 enlisted billets); September 1994 (29,004 enlisted billets); September 1995 (28,618 enlisted billets); and September 1996 (27,739 enlisted billets). Accordingly, there was a reduction of 2,817 enlisted billets authorized from the end of fiscal year 1991 through the end of fiscal year 1996. The figures in this paragraph represent the Coast Guard's contemporaneous judgment regarding the number of billets that the agency could afford to maintain and authorize at the time in light of current and anticipated budget constraints and competing funding priorities.

c.    The Coast Guard reduced the actual number of enlisted service members from the end of fiscal year 1991 through the end of fiscal year 1996, as follows: September 1991 (30,285 enlisted members); September 1992 (30,918 enlisted members); September 1993 (30,699 enlisted members); September 1994 (29,002 enlisted members); September 1995 (28,401 enlisted members); and September 1996 (27,129 enlisted members). Accordingly, there was a

reduction of 3,156 enlisted service members from the end of fiscal year 1991 through the end of

fiscal year 1996.

INTERROGATORY NO. 3:  If your response to Request for Admission No. 3 is
anything other than "admit," identify and describe in detail all Coast Guard policies and
procedures governing reductions in force.

OBJECTION: Defendant objects that this interrogatory is overbroad and unduly
burdensome, insofar as it incorporates the call for information "prior to 2014" in request for
admission number 3, because it does not establish the beginning of the relevant timeframe and
potentially calls for information going back to 1791.  Defendant's answer construes this
interrogatory as having a reasonable timeframe from December 19, 1991 (the date of enactment
of the relevant statute), through December 2014.

ANSWER:    Subject to and without waiving this objection, defendant answers

interrogatory number 3 as follows:

    a.    Between December 1991 and December 2014, 14 U.S.C. § 357(j) governed

reductions in force by the Coast Guard for enlisted service members.  Pursuant to statutory

authority, 14 U.S.C. § 357(j), the Secretary of Homeland Security ordered reductions in force in

2010, 2011, 2012, 2013, and 2014, to be carried out through Active Duty Enlisted Career

Retention Screening Panels (CRSPs), to reduce the size of the retirement eligible enlisted

workforce and increase opportunities for accessions and advancements among the remaining

enlisted service members in all grades.  AR 27-28, 53-54, 86-87, 128-29.

    b.    Each of the 2010, 2011, 2012, 2013, and 2014 CRSPs was governed by a precept,

which set forth policies and procedures that governed those particular reductions in force.  AR

36-48, 69-81, 114-17, 139-42.  Between December 1991 and December 2014, there were no

Coast Guard regulations, policies, or procedures in existence that otherwise would have

governed all reductions in force generally or these CRSPs in particular.

INTERROGATORY NO. 4:  Identify and describe in detail all Coast Guard policies and
procedures in effect from 2008 to 2014 governing "workforce flow" or "workforce shaping."

OBJECTION: Defendant objects that this interrogatory is overbroad and unduly burdensome insofar as it calls for information regarding other types of workforce management tools (also known as workforce shaping or workforce flow tools) that are not CRSPs and were not used by the Coast Guard in selecting plaintiffs for the involuntary retirements at issue.

ANSWER:    Subject to and without waiving this objection, defendant answers interrogatory number 4 as follows:

a.    CRSPs were one of several workforce management tools (also known as workforce shaping or workforce flow tools) that the Coast Guard used to reduce the size of the retirement eligible enlisted workforce and increase opportunities for accessions and advancements among the remaining enlisted service members in all grades during the 2008 through 2014 timeframe.

b.    Each of the CRSPs in 2010, 2011, 2012, 2013, and 2014, was governed by a precept, which set forth policies and procedures that governed the CRSP.  AR 36-48, 69-81, 114-17, 139-42.  Between 2008 and 2014, there were no Coast Guard regulations, policies, or procedures in existence that otherwise would have governed all CRSPs generally.

c.    Other workforce management tools that the Coast Guard used during the 2008 through 2014 timeframe included, but were not limited to, reduced accessions (new enlistments), reactivation of high year tenure, ending indefinite reenlistments, updating reenlistment standards, and early retirement and voluntary separation programs.

INTERROGATORY NO. 5:  Describe in detail any efforts by the Coast Guard from 1991 to 2010 to address "workforce flow" and create opportunities for enlisted service members to be promoted.

OBJECTION: Defendant objects that this interrogatory is overbroad and unduly burdensome insofar as it calls for information regarding other types of workforce management tools (also known as workforce shaping or workforce flow tools) that are not CRSPs and were not used by the Coast Guard in selecting plaintiffs for the involuntary retirements at issue.

ANSWER:    Subject to and without waiving this objection, defendant answers interrogatory number 5 as follows:

a.    CRSPs were one of several workforce management tools (also known as workforce shaping or workforce flow tools) that the Coast Guard used during the 2010 through 2014 timeframe.  As a workforce management tool, CRSPs reduced the size of the retirement eligible enlisted workforce and increased opportunities for accessions and advancements among the remaining enlisted service members in all grades.  CRSPs also improved the flow within the enlisted workforce structure from entrance to exit as measured by retention rates, loss rates, time in service and time in grade.  By improving enlisted workforce flow, CRSPs enabled advancement opportunities for high performing junior enlisted personnel.

b.    Other workforce management tools that the Coast Guard used during the 1991 through 2014 timeframe included, but were not limited to, reduced accessions (new enlistments), reactivation of high year tenure, ending indefinite reenlistments, updating reenlistment standards, and early retirement and voluntary separation programs.

INTERROGATORY NO. 6:  If any of your responses to Requests for Admission Nos. 4, 6, 8, 10, and 12 are anything other than "admit," specify the billets or positions that were eliminated, the year in which those billets or positions were eliminated, whether the Secretary ordered the elimination of those billets or positions in conjunction with authorizing the CRSP for each respective year, and whether personnel serving in those billets or positions were involuntarily retired by that year's CRSP.  Please identify where such order from the Secretary can be found in the relevant sections of the "administrative record" produced by Defendant on April 24, 2019 or the documents produced in response to Plaintiffs' requests for production.

OBJECTION: Defendant objects that this interrogatory as overbroad and unduly burdensome, insofar as it calls for billets or positions that is not readily available in existing Coast Guard records.  Defendant's answer provides responsive information to the extent that it is readily available in existing Coast Guard records.  Defendant also objects to the interrogatory as unduly burdensome to the extent that it requests identification of documents that support our answer.  However, where appropriate, defendant has cited by Bates number documents from the administrative record that that are relevant to the answer to the interrogatory.

ANSWER:    Subject to and without waiving these objections, defendant answers interrogatory number 6 as follows:

a.      The Secretary of Homeland Security ordered reductions in force in 2010, 2011, 2012, 2013, and 2014, to be carried out through CRSPs, pursuant to 14 U.S.C. § 357(j).  AR 27-28, 53-54, 86-87, 128-29.  The Secretary of Homeland Security also approved all Coast Guard budgets during this timeframe, which, in turn, impacted the number of billets (or positions) that the Coast Guard determined it could afford to maintain and authorize.

b.      The Coast Guard reduced the authorized number of enlisted billets from the end of fiscal year 2009 through the end of fiscal year 2015, as follows:  September 2009 (33,550 enlisted billets); September 2010 (33,680 enlisted billets); September 2011 (33,494 enlisted billets); September 2012 (33,397 enlisted billets); September 2013 (32,535 enlisted billets); September 2014 (32,368 enlisted billets); and September 2015 (31,990 enlisted billets). Accordingly, from the end of fiscal year 2009 through the end of fiscal year 2015, there was a reduction of 1,560 enlisted billets, and the vast majority of the enlisted billets that were eliminated were in the grades of E-1, E-2, E-5, and E-6.  The figures in this paragraph represent the Coast Guard's contemporaneous judgment regarding the number of billets that the agency could afford to maintain and authorize at the time in light of current and anticipated budget constraints and competing funding priorities.

c.      The Coast Guard reduced the actual number of enlisted service members from the end of fiscal year 2009 through the end of fiscal year 2015, as follows:  September 2009 (34,103 enlisted members); September 2010 (32,836 enlisted members); September 2011 (33,549 enlisted members); September 2012 (33,331 enlisted members); September 2013 (31,983 enlisted members); September 2014 (31,126 enlisted members); and September 2015 (30,693 enlisted members).  Accordingly, there was a reduction of 3,410 enlisted service members from

the end of fiscal year 2009 through the end of fiscal year 2015, and the vast majority of these reductions consisted of enlisted service members in the grades of E-3, E-4, E-5, and E-6.

      d.      CRSPs were one of several workforce management tools that the Coast Guard used during the period from September 2009 through September 2015. Other workforce management tools that the Coast Guard used during this same time period included reduced accessions (new enlistments), reactivation of high year tenure, ending indefinite reenlistments, updating reenlistment standards, and early retirement and voluntary separation programs. CRSPs were not used to select particular enlisted billets (or positions) for elimination.

      e.      At the end of fiscal year 2009, the number of actual enlisted service members (34,103) was 553 higher than the authorized number of enlisted billets (33,550). At the end of fiscal year 2011, the number of actual enlisted service members (33,549) was 55 higher than the authorized number of enlisted billets (33,494).

      f.      During the 2010, 2011, 2012, 2013, and 2014 CRSPs, the Coast Guard selected a total of 832 enlisted service members for involuntary retirement, as follows:  2010 CRSP (377 enlisted members); 2011 CRSP (55 enlisted members); 2012 CRSP (147 enlisted members); 2013 CRSP (194 enlisted members); and 2014 CRSP (59 enlisted members). Of the 377 enlisted service members who were selected for involuntary retirement during the 2010 CRSP, seven of those enlisted service members successfully appealed their selection and were not involuntarily retired. Accordingly, the Coast Guard involuntarily retired:  (i) 370 enlisted service members as a result of the 2010 CRSP; and (ii) a total of 825 enlisted service members as a result of the 2010, 2011, 2012, 2013, and 2014 CRSPs.

g.    At the end of fiscal year 2014, the number of actual enlisted service members (31,126) had dropped to more than 1,000 below the authorized number of enlisted billets (32,368).

h.    Following the end of fiscal year 2014, the Coast Guard decided that it was not necessary to hold another CRSP in 2015.  AR 164-65.

i.    The Coast Guard generally did not eliminate the billets that were occupied by the enlisted service members in higher grades (E-7 and above) who were selected for involuntary retirement during the 2010, 2011, 2012, 2013, and 2014 CRSPs.  This is because the Coast Guard not only had a goal of reducing the overall size of the entire workforce, but also had a goal of rebalancing the workforce to ensure opportunities for continued accessions and advancements, which were essential for the Coast Guard to maintain a healthy enlisted workforce.  To achieve these twin goals during the period from the end of fiscal year 2009 through the end of fiscal year 2015, the Coast Guard required a combination of (i) reduced numbers of enlisted service members in certain of the lower grades (E-6 and below), (ii) reduced numbers of enlisted billets in certain of the lower grades (E-6 and below), (iii) reduced numbers of retirement eligible enlisted service members and increased turnover in higher grades (E-7 and above), and (iv) stable numbers of enlisted billets in higher grades (E-7 and above).  For example, the increased turnover associated with involuntary retirements of enlisted service members in higher grades (E-7 and above), while maintaining those higher graded billets, reduced the size of the retirement eligible enlisted workforce and increased opportunities for accessions and advancements among the remaining enlisted service members in all grades.  Likewise, reducing the number of enlisted service members in certain of the lower grades (E-6 and below), while also reducing the number of enlisted billets in certain of those lower grades, reduced the overall

size of the workforce and increased opportunities for accessions and advancements by remaining enlisted service members in those lower grades.

j.      When the Secretary of Homeland Security ordered reductions in force in 2010, 2011, 2012, 2013, and 2014, and approved budgets that impacted the number of billets that the Coast Guard reasonably could afford to maintain and authorize in fiscal years 2010 through 2014, the Secretary did not separately and specifically order the elimination of particular billets (or positions) in the Coast Guard.

k.      For ease of reference, the figures set forth above in paragraphs 6(b) through 6(g) regarding enlisted billets and enlisted service members are presented again in the following chart:

| Fiscal Year End | Authorized Enlisted Billets | Actual Enlisted Members | CRSP Reductions In Enlisted Members | Other Reductions In Enlisted Members |
|---|---|---|---|---|
| 2009 | 33,550 | 34,103 | | |
| 2010 | 33,680 | 32,836 | 370 | 897 |
| 2011 | 33,494 | 33,549 | 55 | -768 |
| 2012 | 33,397 | 33,331 | 147 | 71 |
| 2013 | 32,535 | 31,983 | 194 | 1,154 |
| 2014 | 32,368 | 31,126 | 59 | 798 |
| 2015 | 31,990 | 30,693 | 0 | 433 |
| TOTAL | | | 825 | 2,585 |

INTERROGATORY NO. 7:  If any of your responses to Requests for Admission Nos. 24-29 are anything other than "admit," state when each position was eliminated.

ANSWER:      Defendant does not answer this interrogatory because it has admitted requests for admission numbers 24 through 29.

## VERIFICATION

I hereby declare under penalty of perjury that the foregoing answers to interrogatories in paragraph numbers 1(a), 2(a), 3(a), 3(b), 4(a), 4(b), 4(c), 5(a), 5(b), 6(a), 6(d), 6(e) (mathematical tabulation only), 6(f), 6(g) (mathematical tabulation only), 6(h), 6(i), 6(j), and 6(k) (CRSP reductions column of chart and mathematical tabulation in other reductions column of chart only), are true and correct, to the best of my knowledge, information, and belief. My knowledge is based upon personal knowledge and my review of the documents (bearing bates numbers AR 1-165) from the administrative record in this case.

Rear Admiral Daniel A. Neptun
United States Coast Guard (Ret.)

VERIFICATION

I hereby declare under penalty of perjury that the foregoing answers to interrogatories in paragraph numbers 1(c), 2(c), 6(c), 6(e) (member information only), 6(g) (member information only), and 6(k) (actual enlisted members column of chart only), are true and correct to the best of my knowledge, information, and belief.  My knowledge is based upon personal knowledge and my review of enlisted member data stored in the Coast Guard's electronic systems.

Commander Morgan T. Holden
United States Coast Guard

<u>VERIFICATION</u>

I hereby declare under penalty of perjury that the foregoing answers to interrogatories in paragraph numbers 1(b), 2(b), 6(b), 6(e) (billet information only), 6(g) (billet information only), and 6(k) (authorized enlisted billet column of chart only) are true and correct to the best of my knowledge, information, and belief.  My knowledge is based upon personal knowledge, my review of enlisted billet data stored in the Coast Guard's electronic systems, and historical enlisted billet data reported on page 10 of a published report by the United States General Accounting Office, entitled *Coast Guard Workforce Mix* (March 2000), *available at* https://www.gao.gov/new.items/rc00060.pdf (last visited Sept. 25, 2020).

Lieutenant Commander Chad M. Conrad
United States Coast Guard

Respectfully submitted,

SCOTT G. STEWART
Deputy Assistant Attorney General

ROBERT E. KIRSCHMAN, JR.
Director

 s/ Martin F. Hockey, Jr.
MARTIN F. HOCKEY, JR.
Deputy Director

 s/ Douglas G. Edelschick
DOUGLAS G. EDELSCHICK
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
United States Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 353-9303

October 9, 2020                    Attorneys for Defendant

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 9th day of October, 2020, I caused to be served by email by agreement of the parties a copy of the foregoing document, "DEFENDANT'S RESPONSE TO PLAINTIFFS' FIRST SET OF INTERROGATORIES" upon counsel of record for plaintiffs.

       /s Douglas G. Edelschick

CERTIFICATION OF THE ADMINISTRATIVE RECORD

I, Brian Judge, make the following declaration:

1. I am employed by the United States Coast Guard within the Department of Homeland Security, and am located in Washington, D.C. I have been employed by the U.S. Coast Guard as a civilian for over five years. I also served on active duty in the Coast Guard for over 24 years. I am currently the Chief of the Office of Claims and Litigation within the Office of the Judge Advocate General. I am one of the individuals responsible for compiling the agency's administrative record in Tonia Tippins, Derrik Magnuson, George Holloway, Jennifer Rehberg, Glenda Smithleeth, and M. Allen Bumgarder v. United States, Case No. 18-cv-00923 (Fed. Cl.).

2. As the Chief of the Office of Claims and Litigation, my duties include advising Coast Guard programs on matters that are or may be involved in litigation and providing any necessary litigation support to the Department of Justice.

3. To the best of my knowledge, the index to the Coast Guard administrative record filed with the Court in this matter provides a true and accurate listing of the component documents. Each document in the administrative record has been Bates-stamped. The range of numbers pertaining to each document in the record is listed in the index.

4. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the forgoing is true and correct to the best of my knowledge and belief.

Executed on this 13th day of March, 2019.

_____
Brian Judge
Chief, Office of Claims and Litigation
Office of the Judge Advocate General
U.S. Coast Guard



**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CCG
Phone: (202) 372-4411
Fax: (202) 372-4960

1040

APR 1 8 2011

MEMORANDUM FOR:    Secretary Janet Napolitano

FROM:    Admiral R. J. Papp, Jr.
Commandant; (202) 372-4411

SUBJECT:    COAST GUARD ACTIVE DUTY ENLISTED CAREER
RETENTION SCREENING PANEL AUTHORIZATION
REQUEST FOR 2011

---

I request approval for the Coast Guard to hold an Active Duty Enlisted Career Retention Screening Panel (CRSP) in 2011. The Coast Guard successfully held its first panel with your approval in 2010.

The 2010 panel considered 1,181 retirement eligible candidates and selected 377 for involuntary retirement by the end of calendar year 2011. These retirements will allow continued accessions and advancements that are essential for a healthy enlisted workforce.

I have determined that holding another panel in 2011 is in the best interest of the Coast Guard. As in 2010, attrition remains lower than normal. Relatively stagnant military end-strength and lower than normal attrition have resulted in lower than normal accession forecasts. These dynamics will once again place the enlisted workforce in an unhealthy situation, jeopardizing the future military workforce of the Coast Guard. Those not selected for continued service will be involuntarily retired. Members asked to involuntary retire will be entitled to full retirement benefits.

The legal authority to conduct such a panel derives from title 10 U. S. Code Section 1169 and title 14, U.S. Code Section 357 (j). Under Section 357 (j), the Secretary of Homeland Security must provide authorization for involuntary retirements without action by Enlisted Personnel Boards pursuant to a "reduction in force." Section 357(j) does not define "reduction in force," directly or by reference, and the 2010 CRSP avoided that expression in describing the process to the fleet. The Assistant Commandant for Human Resources designed CRSP to strategically rebalance the force toward a more upwardly mobile, performance based demographic.

I plan to establish the panel as an annual workforce shaping option for the Coast Guard to ensure the high performance of our senior enlisted members. I intend to submit a Legislative Change Proposal (LCP) granting the Coast Guard permanent authority to hold this panel as needed. Since the LCP approval will take several years, I request your approval to hold the panel in 2011 while awaiting permanent authority. If approved, the panel will only review enlisted Coast Guard members who are retirement eligible within the panel-directed involuntary retirement timeframe.

Subj:  COAST GUARD ACTIVE DUTY ENLISTED CAREER                    1040
       RETENTION SCREENING PANEL AUTHORIZATION
       REQUEST FOR 2011

Your endorsement of this memo will provide the Coast Guard with the legal authority required to
establish the CRSP as a workforce-shaping tool during 2011.

**Recommendation:**

Recommended you sign.

**Executive Secretariat Clearance:**

Phil McNamara                                    DATE: 4/19/11

**The Secretary**

APPROVED:                                        DATE: 4-20-11

DISAPPROVED:                                     DATE:

COMMENTS:

**Attachments: None**

**AR 28**



**U.S. Department of Homeland Security**

**United States Coast Guard**

Commander
United States Coast Guard
Personnel Service Center

Mail Stop 7200
4200 Wilson Boulevard, Suite 1100
Arlington, VA 20598-7200
Staff Symbol: PSC-c
Phone: (202) 493-1901
Fax: (202) 493-1218

1500

JUN 0 7 2011

## MEMORANDUM

From: D. R. MAY, RDML
CG PSC

To: J. E. RYAN, CAPT
CG-53D

Subj: PRECEPT CONVENING THE PANEL FOR SCREENING OF ACTIVE DUTY
ENLISTED PERSONNEL FOR THE 2011 CAREER RETENTION SCREENING
PANEL (CRSP)

Ref: (a) Coast Guard Personnel Manual, COMDTINST M1000.6A
(b) COGARD WASHINGTON DC 071545Z MAR 11/ALCOAST 086/11
(c) COMCOGARD PSC ARLINGTON VA 252008Z MAR 11/ALCGPSC 048/11

1. A Career Retention Screening Panel (CRSP) is hereby appointed consisting of yourself, as
President, and the following members:

CDR Glenn Brunner
CDR Laura Dickey



Non-voting member:
MCPOCG Michael Leavitt

Non-voting Recorder:



2. The panel will convene at 0900, 20 June 2011, in the Richard D. Bowman Board Room, 5th Floor,
Coast Guard Personnel Service Center, or soon thereafter as practicable for the purpose of selecting
applicants for continued service. The prescribed uniform for members of the panel is Tropical Blue.

3. The panel shall consider all retirement eligible enlisted members, pay grade E-6 and below with 20
or more years of active military service as of 1 June 2011, and all retirement eligible enlisted members
in pay grade E-7 and above with 20 or more years of active military service and who have three or
more years time in grade as of 1 June 2011. Members with approved retirement dates on or before 7

Subj: PRECEPT CONVENING THE PANEL FOR SCREENING        1500
OF ACTIVE DUTY ENLISTED PERSONNEL FOR THE 2011
CAREER RETENTION SCREENING PANEL (CRSP)

March 2013 and those at or above the cut for advancement on the May 2010 SWE eligibility list as of 1 June 2011 are excluded from the panel process. The Enlisted Advancements and Separations branch will provide a list of 2011 CRSP candidates.

4. I have personally appointed the members of this panel. During the panel process, the personnel assigned as panel members work directly for me, under oath. The performance of these duties will have a greater effect on the future of the Coast Guard than any other duty they perform. During the panel process, all other duties of an assigned member are secondary to the panel process and the utmost care will be given to ensure the process is not compromised or rushed to accommodate outside concerns. Each record reviewed represents over 20 years of service to our Nation by the individual candidate. It is absolutely essential that our evaluation afford each eligible candidate fair and equitable consideration. Chief, Enlisted Personnel Management Division will provide you with a list of those individuals included in the candidate pool.

5. Consistent with longstanding Coast Guard Personnel Policy, the procedures for the CRSP will, to the maximum extent practicable, parallel those for boards convened for officers pursuant to reference (a). This is a performance-based panel, in accordance with references (b) and (c). The goal of this screening panel is to produce a list of screened personnel who show a propensity for superior performance, advancement, and upward mobility within the enlisted ranks, by applying the performance criteria provided and considering the member's record. The panel shall list its results alphabetically by categories of **"selected for continuation"** and **"selected for involuntary retirement."** There is no quota for the number of personnel selected for continuation and there is no quota for the number of personnel selected for involuntary retirement within a particular rating.

6. In a military structure, advancements to the next higher grade mandate commensurate increases in responsibility and authority over others. You should look to retain members and leaders who have a demonstrated record of creating and sustaining effective command climates and work environments characterized by respect for others and attention to the morale and welfare of subordinates. An effective leader demonstrates the ability to inspire, mentor, and encourage our people to greater levels of performance; to set the bar high, to inculcate the Coast Guard's values. Likewise, leaders must display the strength of character to hold subordinates accountable for lapses in performance and/or behavior. Our people are the Coast Guard's greatest asset. Our ability to perform our mission ultimately depends on ensuring our people are well trained, well led, professional, and dedicated. The Coast Guard needs leaders who put the mission first, but people always, and who look out for their subordinates' professional and personal interests.

7. Those members recommended for retention must personally reflect the highest standards of conduct, integrity, capability, attitude, and military bearing. You should look to retain members who demonstrate dedication to professional growth commensurate with their chosen ratings; show evidence of progressive development within their rate as they ascend in rank; apply their skills aptly, efficiently and effectively; demonstrate a commitment to continual learning and self improvement through the pursuit of advanced education, certifications, or participation in professional organizations; possess an attitude of selflessness, humility, professionalism and enthusiasm; live by our Core Values of Honor, Respect and Devotion to Duty; seek responsibility, understand their authorities, exercise them judiciously, and ensure accountability. These challenges can only be met by people with sound character who have demonstrated a true commitment to the Coast Guard and who possess

2

**AR 37**

Subj: PRECEPT CONVENING THE PANEL FOR SCREENING    1500
OF ACTIVE DUTY ENLISTED PERSONNEL FOR THE 2011
CAREER RETENTION SCREENING PANEL (CRSP)

competencies to achieve mission success. The enlisted members you select must also be capable of providing the leadership necessary to meet the current missions and operational tempo, while preparing the Coast Guard for future challenges. If we are to be successful in retaining a quality work force, you must ensure only the fully qualified remain in Service.

8. The Coast Guard is firmly committed to equality of treatment and opportunity for all personnel without regard to race, creed, color, gender, or national origin. The candidates you select must be able to help the Coast Guard provide superior public service across all missions and foster cohesiveness in our workforce while strengthening the development of diversity. It is vital that we retain a talented and highly skilled workforce that strengthens our Service by enabling us to better perform our demanding maritime missions. They must have the ability to form effective partnerships within and outside of the service, as our versatile and adaptable maritime service is operating in an increasingly globalized world that continues to present new threats and challenges of ever-increasing complexity. They must be able to sustain key relationships to make our Service more capable and credible in local areas of operation as well as in the greater maritime domain and to support the innovations needed to more effectively and efficiently manage the Coast Guard's resources. This guidance should not be interpreted as requiring or permitting preferential treatment of any candidate or group of candidates on the grounds of race, religion, color, gender, or national origin.

9. You and your panel members are the principal guarantors that the proper balance of leadership, accomplishment, caring, performance, discipline, moral ethics, professional skills, and adherence to our Core Values resides in those selected for continued service. **You may discount minor errors, based on how recently they occurred, as long as subsequent performance reflects lessons learned.**

10. The panel will be provided with the necessary records and clerical assistance by ████████ ████████ and ████████████████ of the Enlisted Advancements and Separations Branch. Both will be available at all times to assist you. Furthermore, Chief, Enlisted Advancements and Separations Branch will be available to address any concerns or issues that may arise during the panel discussions. Upon completion of your deliberations, deliver your report to Chief, Enlisted Personnel Management Division.

11. The panel shall be sworn. The recommendations of the panel require a **two-thirds majority vote** of the members and shall be kept confidential until its report is approved. You shall direct panel members not to divulge any information related to the proceedings or deliberations of this panel.

#

Encl:   (1) General Guidance
        (2) Selection Standard
        (3) Equal Opportunity Guidance
        (4) Panel Reports
        (5) Oaths

Copy:  CG PSC-epm

3

## GENERAL GUIDANCE

1.  **Duties of the Panel President**.  The president of the panel has been appointed by me and shall perform prescribed administrative duties.  The panel president has no authority to constrain the panel from recommending for continuation those enlisted members whom two-thirds of the members of the panel find would be in the best interest of the Coast Guard.

2.  **Panel Procedures**.  The following directions apply to all panel proceedings:

    a.  Each of you (president, members, recorders, and administrative support personnel) must maintain the integrity and independence of this screening panel, and foster careful consideration, without prejudice or partiality, of all eligible shipmates.

    b.  You must pay particularly close attention to the rules governing communications with and among other panel members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this screening panel has been improperly affected.

    c.  You may not receive, initiate, or participate in communications or discussions involving information that Department of Homeland Security (DHS) and Service policy preclude from consideration by a screening panel.  Base your recommendations on the material in each CRSP candidate's official Military Personnel Data Record, any information I have provided to the panel in accordance with DHS and Service policies, and any information communicated to you by individual eligible Coast Guard personnel under regulations I have issued.  In your deliberations, you must limit your discussions to matters contained in the records provided to you.  Any information or personal knowledge, positive or negative, that any board member may have about a CRSP candidate, shall not be discussed, unless that information is otherwise available from the records provided to you.  You may not discuss or disclose the opinion of any person not a member of the panel concerning a CRSP candidate being considered unless that opinion is contained in material provided to the panel.  When discussing your own personal knowledge concerning the professional qualifications of CRSP candidates, the member shall not discuss that personal knowledge or evaluation unless such matters are contained in the CRSP candidate's official record or other material placed before the panel in compliance with the law and Service policy.  In addition, should a CRSP candidate's record reveal the removal of an Enlisted Evaluation Report (EER), the panel member may not discuss any personal knowledge regarding the circumstance which resulted in the removal of the EER.

    d.  The Master Chief Petty Officer of the Coast Guard (MCPOCG) and I are the only persons who may appear in person to address you on other than administrative matters.  All communications with this panel, other than those that are clearly administrative, must be in writing, given to each of you, and made part of the panel's

record. I have designated in writing those persons authorized to provide routine administrative information to you.

e. To ensure impartiality, you may not visit or communicate with Assignment Officer's (AO's) or any candidate immediately prior to or during the screening panel. Communications with outside parties (i.e., other than panel members, recorders, the panel sponsor, and support staff) before, during, or after the panel relating in any way to the screening panel or its proceedings are completely prohibited. Questions concerning the propriety of any communications prior to the panel should be addressed to EPM or EPM-1. Proceedings, deliberations, or recommendations of the screening panel may not be disclosed unless expressly authorized or required by me.

f. Before the report of the FY-11 Career Retention Screening Panel is signed, the recommendations may be disclosed only to members of the panel, recorders, and those administrative support personnel I have designated in writing. I will release the names of the selectees for notification after the panel's report is approved. Do not discuss the names of recommended selectees until after those recommended for involuntary retirement have been notified. The proceedings and deliberations of the panel may not be disclosed to any person who is not a panel member, panel recorder, or administrative support personnel.

g. If at any time you believe that you cannot in good conscience perform your duties as a member of the screening panel without prejudice or partiality, you shall request relief by me from this duty. I will honor any such request. If a member or recorder believes that the integrity of the panel's proceedings has been affected by an improper influence of military or civilian authority, misconduct by the panel president or a member, or any other reason, or believes someone is exerting or attempting to exert inappropriate influence over the panel or its proceedings, he or she shall request from me relief from the obligation not to disclose panel proceedings and, upon receiving it, to report the basis for this belief.

h. During the period the panel is in session, you are not authorized to hold social gatherings/meetings that involve groups of panel members/recorders and non-board members. Discussions involving panel actions may be held only in panel spaces with recorders present.

3  **Marital Status**. Screening panels are prohibited from considering the marital status of an eligible CRSP candidate or the employment, education, or volunteer service of an eligible CRSP candidate's spouse.

4. **Leadership of Diverse Organizations**. When reviewing a CRSP candidate's potential for continuation, consider that the Coast Guard benefits when Coast Guard leadership possesses a broad spectrum of experience with a depth and breadth of vision. The Coast Guard needs innovative and bold leaders who think creatively, challenge assumptions, and take well calculated risks that maximize effectiveness. Deck plate results and command success through team performance are significant

criteria for consideration.  Within today's Coast Guard are shipmates representing 24 ethnic groups and literally hundreds of cultural heritages.  In light of this diversity, you should give careful attention to selecting shipmates who have demonstrated the potential to lead a diverse workforce and create circumstances for the success of all Coast Guard members.  The Coast Guard's ability to meet this leadership challenge depends, in part, on having deck plate leaders capable of influencing diverse groups of people to successfully complete their assigned mission.

5.  **Adverse Information**.  Just as you must consider positive performance, you must consider incidents of misconduct and substandard performance documented in a CRSP candidate's official Military Personnel Data Record (PDR) when determining those CRSP candidates to be recommended for continuation.  For those CRSP candidates who are recommended for continuation and who have received disciplinary action, or whose privileged information record contains matters relating to conduct or performance of duty that occurred within the **past five years or since advancement to their current pay grade (E5, E6, E7, E8, E9) whichever is longer,** all such incidents must be fully disclosed when the slates are briefed for recommendation for continuation and prior to the final panel decision.

## SELECTION STANDARD

1.  The screening panel shall consider carefully, without prejudice or partiality, the record of every eligible Career Retention Screening Panel (CRSP) candidate.  The CRSP candidates selected for continuation by the FY-11 CRSP screening panel for enlisted personnel with greater than 20 years active service will be those shipmates whose continued service is considered to be the best interest of the Coast Guard by a **two-thirds majority of the members of the panel.**  CRSP candidates not selected for continuation will be involuntarily retired.

2.  The following considerations should guide your recommendations.  Members assigned to brief individual records are expected to use these considerations to guide their briefs' review and structure.  Each panel member is expected to apply this guidance when deliberating and voting.  Considerations are:

  a.  The Coast Guard requires senior enlisted personnel to serve as deck plate leaders that demonstrate the ability to develop shipmates and enforce standards while conducting themselves in a consistently professional and ethical manner.  Their personal and professional attributes include being a visible leader, setting the tone of the unit, and serving as the technical experts in their chosen field, including rating agility by seeking positions that promote upward mobility.  They produce well trained enlisted and officer teams.  They teach, uphold and enforce standards while providing proactive solutions that are well founded and linked to mission accomplishment.  They demonstrate uncompromising integrity, take full responsibility for their actions while demonstrating loyalty to seniors, peers and subordinates.  They encourage open and frank communication that increases unit efficiency, mission readiness and mutual respect.  They define our past and guide the Coast Guard's future to enhance pride in service to our country.  They have positive command and Coast Guard wide mission impact.  They demonstrate adherence to Coast Guard and DHS ethical standards, Coast Guard weight and body fat standards, loyalty to the Coast Guard Core Values and the Commandant's Guiding Principles of Steady the Service, Honor Our Profession, Strengthen Our Partnerships, and Respect Our Shipmates.

  b.  While the above represents the "gold standard" of senior enlisted performance, the following adverse performance indicators occurring within the last 5 years, or since advancement to current grade (E5, E6, E7, E8, E9) whichever is longer (e.g., if a member was advanced to their current rank seven years ago, the last seven years of performance will be used), shall be specifically addressed when considering whether a CRSP candidate's continuation is in the best interest of the Coast Guard.  The below adverse performance indicators will be applied objectively, identified by categories of yes and no: "Yes" will indicate the CRSP candidate's record reflects an adverse performance indicator, or "no" a CRSP candidate's record has no adverse performance indicator:

    (1) Substandard performance of duty to include receipt of a "not recommended" for advancement based on an unsatisfactory conduct mark or declining performance with

the same approving official in the rating chain;

(2)  Receipt of an Enlisted Evaluation Report (EER) with a minimum average characteristic marks of 3.5 or below;

(3)  Moral or professional dereliction, such as Relief for Cause;

(4)  Failure to meet service norms or regulations concerning alcohol use and body fat standards;

(5)  Documented misconduct involving violation of the UCMJ, e.g., Non-Judicial Punishment or conviction by military Court-Martial; or conviction by civilian court;

(6)  Other documented adverse information clearly indicating that the CRSP candidate's continuation may be inconsistent with national security interest or may otherwise not be in the best interest of the Coast Guard, such as losing one's security clearance;

(7)  Financial irresponsibility; such as failure to pay just debts or a pattern of Government Credit Card delinquency/revocation of a CRSP candidates Government Credit Card due to misuse or failure to pay outstanding balance.

(8)  A candidate on performance probation who does not demonstrate progress during the probationary period in overcoming the deficiency;

(9)  Failure to demonstrate upward mobility.  For E-9's, failure to demonstrate upward mobility means a lack of career positions that demonstrate versatility in rate and leadership responsibility.  For E-8 and below, this adverse performance indicator on its own cannot be enough to determine involuntary retirement.

c.  For CRSP candidates who do not have documented adverse performance indicators according to the above guidance, continuation shall be presumed to be in the best interest of the Coast Guard.

d.  For a CRSP candidate who has documented information indicating adverse performance according to the above guidance, continuation shall be presumed to not be in the best interest of the Coast Guard.  A secondary and subjective review shall be applied to allow consideration for continued service when the majority of the panel members find that:

(1)  The CRSP candidate can continue to effectively exercise leadership and be a positive role model for junior shipmates;

(2)  For E7 or E8, the CRSP candidate remains viable for further advancement; and

(3) The CRSP candidate's record, including consideration of critical skills, is otherwise so meritorious as to overcome concerns raised by the adverse performance information.

e.  Today's Coast Guard comprises shipmates representing 24 different ethnic groups and hundreds of cultural heritages.  Senior enlisted Petty Officers must have demonstrated the ability to successfully lead diverse workforces, while executing the Coast Guard's strategic diversity initiatives and effectively retaining the right quality and quantity of performance-proven personnel.

f.  Among the eligible CRSP candidates presented to the panel, you must consider the following in your deliberations of meritorious service:

(1) Deck-plate Leadership.  Proven and sustained superior performance in difficult and challenging leadership positions is the number one factor for selection to continue.  When applying this factor you must consider that the future Coast Guard leadership will comprise a mix of service members that have excelled in both traditional and alternate career paths.  Demonstrated skill in developing teamwork and individual performance improvements should be carefully considered along with subordinate achievements and accomplishments.  Eligible CRSP candidates must have clearly set the tone for the personnel assigned to their units and demonstrated commitment to subordinates' personal and professional growth.

(2) Arduous Duty.  Consideration shall be given to evidence of professional and leadership excellence under arduous conditions.

## EQUAL OPPORTUNITY GUIDANCE

1.   The Department of Homeland Security is dedicated to equality of treatment and opportunity for all personnel without regard to race, religion, color, gender, or national origin.  The Coast Guard strives to maintain a professional working environment in which an individual's race, religion, color, gender, or national origin will not limit his or her professional opportunities.  Accordingly, within this screening panel's charter to determine the candidates that are "best and fully qualified," you must ensure that candidates are not disadvantaged because of their race, religion, color gender, or national origin.

2.   Your evaluation of all candidates must afford them fair and equitable consideration. You should be particularly vigilant in your evaluation of records to take care that no candidate's selection opportunity is disadvantaged by service utilization policies or practices.  You should evaluate each candidate's potential to assume greater, more challenging responsibilities, the overriding factor being performance of assigned duties.

3.   The Coast Guard has assigned some candidates to special assignments outside of traditional career development patterns, e.g., institutional instructors, recruiting and equal opportunity billets.  In addition, other utilization policies or practices, such as those based on statutory restrictions on the assignment of women, may have had an effect on career opportunities.  These assignments, though beneficial to the Coast Guard, may have precluded some candidates from serving on traditional career development assignments. Such assignment practices should not prejudice the selection of these candidates for selection.  Successful performance of assigned duties is the key in measuring a candidates potential for selection.  Accordingly, in determining the qualification for selection of any candidate that has been affected by such utilization policies or practices, duty performed well in such assignments should be given weight equal to duty performed well by a candidate not affected by such policies or practices.

4.  This guidance should not be interpreted as requiring or permitting preferential treatment of any candidate or group of candidates on the grounds of race, religion, color, gender, or national origin.

## SCREENING PANEL REPORTS

1.   The record of the screening panel's proceedings shall be compiled by the recorder, assistant recorder, and administrative support personnel.  The written report of the screening panel shall be signed by the panel president, the panel members, the panel recorder, and the assistant panel recorder.  It shall contain, separately, an alphabetical listing of the names of the 2011 Career Retention Screening Panel (CRSP) candidates selected for continuation and the those selected for involuntary retirement with appropriate selection statistics as well as the following items:

   a.   All instructions, information, and guidance that were provided to the panel.

   b.   Certification that:

       (1)  To the best of your knowledge, the panel complied with all instructions contained in the precept and, as appropriate, other memorandums of guidance or instruction provided by me;

       (2)  You were not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the screening panel or the exercise of any lawful function within the authorized discretion of the panel;

       (3)  You were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the panel's recommendations;

       (4)  You were not party to or aware of any attempt at unauthorized communications;

       (5)  To the best of your knowledge, the screening panel carefully considered the records of each candidate whose name was furnished to the panel;

       (6)  The 2011 CRSP candidates recommended for continuation are, in the opinion of at least two-thirds of the members of the panel, most qualified for continuation to meet the needs of the Coast Guard among those candidates whose names were furnished to the panel;

       (7)  You are aware that the names of those selected for continuation will be released to the public after the panel report is approved, and you know that you may not disclose the recommended selectees until the names are released to the public;

       (8)  You are aware that the names of those selected for involuntary retirement will be released privately after the panel report is approved, and you know that you may not disclose the names of those not recommended for continuation; and

(9)  You understand that, except as authorized by Coast Guard Regulations you may never disclose the proceedings and deliberations of the screening panel to any person who is not a panel member, recorder, or assistant recorder.

    c.  A list of all candidates eligible for consideration.

    d.  Precept

2.  The screening panel report shall be forwarded for approval to me via the Chief , Enlisted Personnel Management, Coast Guard Personnel Service Center.

### OATHS

1. Chief, Enlisted Personnel Management Division shall administer the following oath or affirmation to, the Chief, Enlisted Advancements and Separations Branch:

> "Do you, solemnly swear (or affirm) that you will keep a true record of the proceedings of this screening panel, and you will not divulge the proceedings of this panel except as authorized or required by the Commander, Coast Guard Personnel Service Center (CG PSC) or higher authority, so help you God?"

2. Chief, Enlisted Advancements and Separations Branch shall then administer the following oath or affirmation to the Career Retention Screening Panel, panel recorder, and assistant panel recorder:

> "Do you, and each of you, solemnly swear (or affirm) that you will perform your duties as a member of the screening panel without prejudice or partiality, having in view both the special fitness of candidates and the efficiency of the United States Coast Guard, and you will not divulge the proceedings of this panel except as authorized or required by the Commander, Coast Guard Personnel Service Center (CG PSC) or higher authority, so help you God?"

3. The recorder or assistant recorder shall then administer the following oath or affirmation to the other support personnel:

> "Do you, and each of you, solemnly swear (or affirm) that you will not divulge the proceedings of this screening panel except as authorized or required by the Command, Coast Guard Personnel Service Center (CG PSC) or higher authority, so help you God?"



**U.S. Department of Homeland Security**

**United States Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-0001
Staff Symbol: CG-00
Phone: (202) 372-4411
Fax: (202) 372-4960

1040

DEC 1 2 2011

MEMORANDUM FOR:    Janet Napolitano
                   Secretary

FROM:              Admiral R. J. Papp, Jr.
                   Commandant; (202) 372-4411

SUBJECT:           COAST GUARD ACTIVE DUTY ENLISTED CAREER
                   RETENTION SCREENING PANEL AUTHORIZATION
                   REQUEST FOR 2012

I request approval for the Coast Guard to hold an Active Duty Enlisted Career Retention Screening Panel (CRSP) in 2012. The Coast Guard held two panels with your approval in 2010 and 2011.

The 2011 panel considered 259 retirement eligible candidates and selected 55 for involuntary retirement by the end of calendar year 2012. These retirements will allow continued accessions and advancements that are essential for a healthy enlisted workforce.

I have determined that holding another panel in 2012 is in the best interest of the Coast Guard. CRSP is designed to strategically rebalance the enlisted force toward a more upwardly mobile, performance based demographic. As in 2010 and 2011, attrition remains lower than normal. Relatively stagnant military end-strength and lower than normal attrition rates continue to result in lower than normal accession forecasts. These dynamics jeopardize the future military workforce of the Coast Guard by slowing the advancement of the Coast Guard's most high performing enlisted members.

Those not selected for continued service will be involuntarily retired. Members identified for involuntary retirement will be entitled to full retirement benefits. The legal authority to conduct a CRSP panel derives from title 10, U. S. Code Section 1169 and title 14, U.S. Code Section 357 (j). Under Section 1169, regular enlisted members of an armed force may be discharged, before service term expiration, as the Secretary concerned may prescribe. Under Section 357 (j), the Secretary of Homeland Security may authorize involuntary retirements without action by Enlisted Personnel Boards pursuant to a "reduction in force." In order to avoid creating confusion in the fleet, the CRSP process does not include the term "reduction in force," which has specific meanings in other statutory contexts, because title 14 does not define, directly or by reference, "reduction in force." USCG counsel, Mort Shea, reviewed this action and has determined it complies with applicable laws and regulations.

Subj:    COAST GUARD ACTIVE DUTY ENLISTED CAREER RETENTION    1040
            SCREENING PANEL AUTHORIZATION REQUEST FOR 2012

As previously indicated, I plan to establish the panel as an annual workforce shaping option for the Coast Guard to ensure the high performance of our senior enlisted members. I am in the process of submitting a Legislative Change Proposal (LCP) granting the Coast Guard permanent authority to hold this panel as needed. Since the LCP approval may take several years, I request your approval to hold the panel in 2012 while awaiting permanent authority. If approved, the panel will only review enlisted Coast Guard members who are retirement eligible within the panel-directed involuntary retirement timeframe.

Your endorsement of this memo will provide the Coast Guard with the legal authority required to establish the CRSP as a workforce-shaping tool during 2012.

Approve/date _____ 12-21-11     Disapprove/date _____

Modify/date _____     Needs discussion/date _____

cc:



| | | |
|---|---|---|
| **U.S. Department of Homeland Security** | Commander<br>United States Coast Guard<br>Personnel Service Center | Mail Stop 7200<br>4200 Wilson Boulevard, Suite 1100<br>Arlington, VA 20598-7200<br>Staff Symbol: PSC-c<br>Phone: (202) 493-1901<br>Fax: (202) 493-1218 |
| **United States Coast Guard** | | |

1040

# MEMORANDUM

JUN 0 8 2012

From:   D. R. Callahan, RDML
        CG PSC

To:     R. P. Wagner, CAPT

Subj:   PRECEPT CONVENING THE PANEL FOR SCREENING OF ACTIVE DUTY
        ENLISTED PERSONNEL FOR THE 2012 CAREER RETENTION SCREENING
        PANEL (CRSP)

Ref:    (a) COMDT Washington DC 132040Z Jan 12/ALCOAST 025/12
        (b) COMCOGARD PSC Arlington VA 201814Z Jan 12/ALCGENL 007/12

1.   A Career Retention Screening Panel (CRSP) is hereby appointed consisting of yourself, as
President, and the following members:

   CDR Linda Sturgis
   CDR Brian Koshulsky



   Non-voting member:

   Non-voting Recorders:

2.   The panel will convene at 0900, 18 June 2012, in the Richard D. Bowman Board Room, 5th
Floor, Coast Guard Personnel Service Center, or soon thereafter as practicable for the purpose of

Subj: PRECEPT CONVENING THE PANEL FOR SCREENING        1040
OF ACTIVE DUTY ENLISTED PERSONNEL FOR THE 2012
CAREER RETENTION SCREENING PANEL (CRSP)

selecting applicants for continued service. The prescribed uniform for members of the panel is
Tropical Blue.

3. The panel shall consider all retirement eligible enlisted members, pay grade E-6 and below with
20 or more years of active military service as of 1 June 2012, and all retirement eligible enlisted
members in pay grade E-7 and above with 20 or more years of active military service and who have
three or more years time in grade as of 1 June 2012. The 2012 CRSP will also review those who
were previously screened and retained by the 2010 CRSP, provided they still meet the eligibility
requirements listed above. Members with approved retirement dates on or before 1 December
2013, those members who successfully screened and were retained in the 2011 CRSP, and those at
or above the cut for advancement on the May and November 2011 SWE eligibility list as of 1 June
2012 or above the cut for promotion to Chief Warrant Officer shall be excluded from the panel
process. Chief, Enlisted Personnel Management Division will provide you with a list of those
individuals included in the candidate pool.

4. I have personally appointed the members of this panel. During the panel process, the personnel
assigned as panel members work directly for me, under oath. The performance of these duties will
have a greater effect on the future of the Coast Guard than any other duty they perform. During the
panel process, all other duties of an assigned member are secondary to the panel process and the
utmost care will be given to ensure the process is not compromised or rushed to accommodate
outside concerns. Each record reviewed represents over 20 years of service to our Nation by the
individual candidate. It is absolutely essential that our evaluation afford each eligible candidate fair
and equitable consideration.

5. This is a performance and conduct based panel, in accordance with references (a) and (b). The
goal of this screening panel is to produce a list of screened personnel who show a propensity for
upward mobility, advancement, and superior performance within the enlisted ranks, by applying the
performance criteria provided and considering the member's whole record. The panel shall list its
results alphabetically by categories of **"selected for retention"** and **"selected for involuntary
retirement."** There is no quota for the number of personnel selected for involuntary retirement and
there is no quota for the number of personnel selected for involuntary retirement within a particular
rating.

6. In a military structure, advancements to the next higher grade mandate commensurate increases
in responsibility and authority over others. You should look to retain members and leaders who
have demonstrated a record of creating and sustaining effective command climates and work
environments characterized by respect for others and attention to the morale and welfare of
subordinates. An effective leader demonstrates the ability to inspire, mentor, and encourage our
people to greater levels of performance; to set the bar high; and to inculcate the Coast Guard's Core
Values. Likewise, leaders must display the strength of character to hold subordinates accountable
for lapses in performance and/or behavior. Our people are the Coast Guard's greatest asset. Our
ability to perform our mission ultimately depends on ensuring our people are well trained, well led,
professional, and dedicated. The Coast Guard needs leaders who put the mission first, but people
always, and who look out for their subordinates' professional and personal interests.

7. Those members identified for retention must reflect the highest standards of conduct, integrity,
capability, attitude, and military bearing. You should look to retain members who demonstrate
dedication to professional growth commensurate with their chosen ratings; show evidence of
progressive development within their rate as they ascend in rank; apply their skills aptly, efficiently
and effectively; demonstrate a commitment to continual learning and self improvement through the
pursuit of advanced education, certifications, or participation in professional organizations; possess

2

Subj: PRECEPT CONVENING THE PANEL FOR SCREENING          1040
OF ACTIVE DUTY ENLISTED PERSONNEL FOR THE 2012
CAREER RETENTION SCREENING PANEL (CRSP)

an attitude of selflessness, humility, professionalism and enthusiasm; live by our Core Values of
Honor, Respect and Devotion to Duty; seek responsibility, understand their authorities, exercise
them judiciously, and ensure accountability. These challenges can only be met by people with
sound character who have demonstrated a true commitment to the Coast Guard and who possess
competencies to achieve mission success. The enlisted members you identify must also be capable
of providing the leadership necessary to meet the current missions and operational tempo, while
preparing the Coast Guard for future challenges. If we are to be successful in retaining a quality
work force, you must ensure only the fully qualified remain in Service.

8. The Coast Guard is firmly committed to equality of treatment and opportunity for all personnel
without regard to race, creed, color, gender, or national origin. The candidates you select must be
able to help the Coast Guard provide superior public service across all missions and foster
cohesiveness in our workforce while strengthening the development of diversity. It is vital that we
retain a talented and highly skilled workforce that strengthens our Service by enabling us to better
perform our demanding maritime missions. They must have the ability to form effective
partnerships within and outside of the service, as our versatile and adaptable maritime service is
operating in an increasing globalized world that continues to present new threats and challenges of
ever-increasing complexity. They must be able to sustain key relationships to make our Service
more capable and credible in local areas of operation and as well as in the greater maritime domain
and to support the innovations needed to more effectively and efficiently manage the Coast Guard's
resources. This guidance should not be interpreted as requiring or permitting preferential treatment
of any candidate or group of candidate on the grounds of race, religion, color, gender, or national
origin.

9. You and your panel members are the principal guarantors that the proper balance of leadership,
accomplishment, caring, performance, discipline, moral ethics, professional skills, and adherence to
our Core Values abides in those selected for retention. **You may discount minor errors, based on
how recently they occurred, and as long as subsequent performance reflects lessons learned.**

10. The panel will be provided with the necessary records and clerical assistance by ▉▉▉▉
▉▉ and ▉▉▉▉▉▉▉▉ of the Enlisted Advancements and Separations Branch. Both will be
available at all times to assist you. Furthermore, Chief, Enlisted Advancements and Separations
Branch will be available to address any concerns or issues that may arise during the panel
discussions. Upon completion of your deliberations, deliver your report to Chief, Enlisted
Personnel Management Division.

11. The panel shall be sworn. The recommendations of the panel require a **two-thirds majority
vote for members selected** and shall be kept confidential until its report is approved. You shall
direct panel members not to divulge any information related to the proceedings or deliberations of
this panel.

#

5 Enclosures: (1) General Guidance
              (2) Selection Standard
              (3) Equal Opportunity Guidance
              (4) Panel Reports
              (5) Oaths

Copy: CG PSC-epm

3

# GENERAL GUIDANCE

1. **Duties of the Panel President**. The president of the panel has been appointed by me and shall perform prescribed administrative duties. The panel president has no authority to constrain the panel from identifying candidates for retention, whom **two-thirds majority of the members of the panel** agree should continue on active duty, or from identifying candidates for involuntary retirement that **two-thirds majority of the members of the panel** agree should not continue on active duty.  Those enlisted members whom two-thirds of the members of the panel identified for retention are considered in the best interest of the Coast Guard to retain.

2. **Panel Procedures**. The following directions apply to all panel proceedings:

   a. Each of you (president, members, recorders, and administrative support personnel) must maintain the integrity and independence of this screening panel, and foster careful consideration, without prejudice or partiality, of all eligible shipmates.

   b. You must pay particularly close attention to the rules governing communications with and among other panel members, the information authorized to be furnished to you, and the procedures you should follow if you believe that the integrity of this screening panel has been improperly affected.

   c. You may not receive, initiate, or participate in communications or discussions involving information that Department of Homeland Security (DHS) and Service policy preclude from consideration by a screening panel.  Base your recommendations on the material in each CRSP candidate's official Military Personnel Data Record (PDR), any information I have provided to the panel in accordance with DHS and Service policies, and any information communicated to you by individual eligible Coast Guard personnel under regulations I have issued.  In your deliberations, you must limit your discussions to matters contained in the records provided to you.  Any information or personal knowledge, positive or negative, that any board member may have about a CRSP candidate, shall not be discussed, unless that information is otherwise available from the records provided to you.   When considering your own personal knowledge concerning the professional qualifications of CRSP candidates, the member shall remain objective and not discuss that personal knowledge or evaluation unless such matters are contained in the CRSP candidate's official record or other material placed before the panel in compliance with the law and Service policy.  *Should you feel that you cannot remain objective about a candidate due to personal knowledge, positive or negative, or you are currently in a candidate's rating chain (or have influence over their rating chain) you shall abstain from the voting process.*  In the case of an abstention, the remaining panel members must still meet the two-thirds majority vote for candidates both identified for retention and for involuntary retirement.  You may not discuss or disclose the opinion of any person not a member of the panel concerning a CRSP candidate being considered unless that opinion is contained in material provided to the panel.  In addition, should a CRSP candidate's record reveal the removal of an Enlisted Evaluation Report (EER), the panel member may not discuss any personal knowledge regarding the circumstance(s) which resulted in the removal of the EER.

   d. The Master Chief Petty Officer of the Coast Guard (MCPOCG) and I are the only persons who may appear in person to address you on other than administrative matters.  All communications with this panel, other than those that are clearly administrative, must be in writing, given to each

of you, and made part of the panel's record. I have designated in writing those persons authorized to provide routine administrative information to you.

e. To ensure impartiality, you may not visit or communicate with Assignment Officer's (AO's) or any candidate immediately prior to or during the screening panel. Communications with outside parties (i.e., other than panel members, recorders, the panel sponsor, and support staff) before, during, or after the panel relating in any way to the screening panel or its proceedings are completely prohibited. Questions concerning the propriety of any communications prior to the panel should be addressed to EPM or EPM-1. Proceedings, deliberations, or recommendations of the screening panel may not be disclosed unless expressly authorized or required by me.

f. Before the report of the 2012 Career Retention Screening Panel is signed, the recommendations may be disclosed only to members of the panel, recorders, and those administrative support personnel I have designated in writing. I will release the names of the selectees for notification after the panel's report is approved. Do not discuss the names of recommended selectees until after those identified for involuntary retirement have been notified. The proceedings and deliberations of the panel may not be disclosed to any person who is not a panel member, panel recorder, or administrative support personnel.

g. If at any time you believe that you cannot in good conscience perform your duties as a member of the screening panel without prejudice or partiality, you shall request relief by me from this duty. I will honor any such request. If a member or recorder believes that the integrity of the panel's proceedings has been affected by an improper influence of military or civilian authority, misconduct by the panel president or a member, or any other reason, or believes someone is exerting or attempting to exert inappropriate influence over the panel or its proceedings, he or she shall request from me relief from the obligation not to disclose panel proceedings and, upon receiving it, to report the basis for this belief.

h. During the period the panel is in session, you are not authorized to hold social gatherings/meetings that involve groups of panel members/recorders and non-board members. Discussions involving panel actions may be held only in panel spaces with recorders present.

3. **Marital Status**. Screening panels are prohibited from considering the marital status of an eligible CRSP candidate or the employment, education, or volunteer service of an eligible CRSP candidate's spouse.

4. **Leadership of Diverse Organizations**. When reviewing a CRSP candidate's potential for retention, consider that the Coast Guard benefits when Coast Guard leadership possesses a broad spectrum of experience with a depth and breadth of vision. The Coast Guard needs innovative and bold leaders who think creatively, challenge assumptions, and take well calculated risks that maximize effectiveness. Deck plate results and command success through team performance are significant criteria for consideration. Today's Coast Guard is manned by shipmates representing 24 ethnic groups and literally hundreds of cultural heritages. In light of this diversity, you should give careful attention to selecting shipmates who have demonstrated the potential to lead a diverse workforce and create circumstances for the success of all Coast Guard members. The Coast Guard's ability to meet this leadership challenge depends, in part, on having deck plate leaders capable of influencing diverse groups of people to successfully complete their assigned mission.

5. **Adverse Information**. Just as you must consider positive performance, you must consider incidents of misconduct and substandard performance documented in a CRSP candidate's official PDR when determining those CRSP candidates to be identified for retention. For those CRSP candidates who are recommended for retention and who have received disciplinary action, or whose privileged PDR contains matters relating to conduct or performance of duty that occurred within the **past <u>five</u> years or since advancement to their current pay grade (E5, E6, E7, E8, E9) whichever is longer**, all such incidents must be fully disclosed when the slates are briefed for recommendation for retention and prior to the final panel decision.

6. **PDR & Electronic Systems.** You will be provided hardcopy documents and electronic record systems for use during the screening process. As you proceed, there is a high probability that you will encounter an EER(s) in Direct Access (DA) that is still in progress and visible; however, this should be disregarded. You shall only consider EERs that are approved and final, as that is when they become part of the official record and valid for consideration. Additionally, you are reminded that comments for the EER dimensions may only be contained in DA and not on a CG Form-3307.

## SELECTION STANDARD

1.  The screening panel shall consider carefully, without prejudice or partiality, the record of every eligible Career Retention Screening Panel (CRSP) candidate. <u>The candidates identified for retention by the 2012 CRSP, for enlisted personnel with greater than 20 years active service, will be those shipmates whose continued service is considered to be the best interest of the Coast Guard by a **two-thirds majority of the members of the panel**. CRSP candidates identified for involuntary retirement must also be established by a **two-thirds majority of the members of the panel.**</u>

2.  The following considerations should guide your recommendations. Members assigned to brief individual records are expected to use these considerations to guide their briefs' review and structure. Each panel member is expected to apply this guidance when deliberating and voting. Considerations are:

a.  The Coast Guard requires senior enlisted personnel to serve as deck plate leaders that demonstrate the ability to develop shipmates and enforce standards while conducting themselves in a consistently professional and ethical manner. Their personal and professional attributes include being a visible leader, setting the tone of the unit, and serving as the technical experts in their chosen field. They produce well trained enlisted and officer teams. They teach, uphold and enforce standards while providing proactive solutions that are well-founded and linked to mission accomplishment. They demonstrate uncompromising integrity; take full responsibility for their actions while demonstrating loyalty to seniors, peers and subordinates. They encourage open and frank communication that increases unit efficiency, mission readiness and mutual respect. They define our past and guide the Coast Guard's future to enhance pride in service to our country. They have positive command and Coast Guard wide mission impact. They demonstrate adherence to Coast Guard and DHS ethical standards, Coast Guard weight and body fat standards, loyalty to the Coast Guard Core Values and the Commandant's Guiding Principles of Steady the Service, Honor Our Profession, Strengthen Our Partnerships, and Respect Our Shipmates.

b.  While the above represents the "<u>gold standard</u>" of senior enlisted performance, the following adverse performance indicators occurring **within the last 5 years**, or since advancement to current grade (E5, E6, E7, E8, E9), whichever is longer (e.g., if a member was advanced to their current rank nine years ago, the last nine years of performance will be used), shall be specifically addressed when considering whether a CRSP candidate's continuation is in the best interest of the Coast Guard. The below adverse performance indicators will be applied objectively, identified by categories of yes and no:

"Yes" will indicate the CRSP candidate's record reflects an adverse performance indicator or

"No" a CRSP candidate's record has no adverse performance indicator:

(1) Substandard performance of duty to include receipt of a "not recommended" for advancement based on loss or recommendation, performance probation or incompetency,

an unsatisfactory conduct mark, and/or declining performance with the same approving official in the rating chain;

(2) Receipt of an Enlisted Evaluation Report (EER) with a minimum average characteristic marks of 3.5 or below;

(3) Moral or professional dereliction, such as Relief for Cause;

(4) Failure to meet service norms or regulations concerning alcohol use and body fat standards;

(5) Documented misconduct involving violation of the UCMJ, e.g., Non-Judicial Punishment or conviction by military Court-Martial; or conviction by civilian court;

(6) Other documented adverse information clearly indicating that the CRSP candidate's continuation may be inconsistent with national security interest or may otherwise not be in the best interest of the Coast Guard, such as losing one's security clearance;

(7) Financial irresponsibility; such as failure to pay just debts or a pattern of Government Credit Card delinquency/revocation of a CRSP candidates Government Credit Card due to misuse or failure to pay outstanding balance.

(8) A candidate on performance probation who does not demonstrate progress during the probationary period in overcoming the deficiency;

(9) Failure to demonstrate upward mobility to include participation in SWE, completion of EPME, completion of OIC qualifications, attendance at the CPO Academy, and viability for future advancement.  For E-8 and below, this adverse performance indicator alone cannot be enough to determine involuntary retirement. For E-9's failure to demonstrate upward mobility means a lack of career positions that demonstrate versatility in rate and leadership responsibility.

c. For CRSP candidates who do not have documented adverse performance indicators according to the above guidance, continuation shall be presumed to be in the best interest of the Coast Guard.

d. For a CRSP candidate who has documented information indicating adverse performance according to the above guidance, continuation shall be presumed to not be in the best interest of the Coast Guard. A secondary and subjective review shall be applied to allow consideration for retention when the majority of the panel members find that:

(1) The CRSP candidate can continue to effectively exercise leadership and be a positive role model for junior shipmates;

(2) For E7 or E8, the CRSP candidate remains viable for further advancement; and

(3) The CRSP candidate's record, including consideration of critical skills, is otherwise so meritorious as to overcome concerns raised by the adverse performance information.

e. Today's Coast Guard comprises shipmates representing 24 different ethnic groups and hundreds of cultural heritages. Senior enlisted Petty Officers must have demonstrated the ability to successfully lead diverse workforces, while executing the Coast Guard's strategic diversity initiatives and effectively retaining the right quality and quantity of performance-proven personnel.

f. Among the eligible CRSP candidates presented to the panel, you must consider the following in your deliberations of meritorious service:

(1) Deck-plate Leadership. Proven and sustained superior performance in difficult and challenging leadership positions is the number one factor for selection to continue. When applying this factor you must consider that the future Coast Guard leadership will comprise a mix of service members that have excelled in both traditional and alternate career paths. Demonstrated skill in developing teamwork and individual performance improvements should be carefully considered along with subordinate achievements and accomplishments. Eligible CRSP candidates must have clearly set the tone for the personnel assigned to their units and demonstrated commitment to subordinates' personal and professional growth.

(2) Arduous Duty. Consideration shall be given to evidence of professional and leadership excellence under arduous conditions.

Enclosure (2)

**AR 77**

## **EQUAL OPPORTUNITY GUIDANCE**

1.   The Department of Homeland Security is dedicated to equality of treatment and opportunity for all personnel without regard to race, religion, color, gender, or national origin.   The Coast Guard strives to maintain a professional working environment in which an individual's race, religion, color, or national origin will not limit his or her professional opportunities.   Accordingly, within this screening panel's charter to determine the candidates that are "best and fully qualified," you must ensure that candidates are not disadvantaged because of their race, religion, color gender, or national origin.

2.   Your evaluation of all candidates must afford them fair and equitable consideration. You should be particularly vigilant in your evaluation of records to take care that no candidate's selection opportunity is disadvantaged by service utilization policies or practices.   You should evaluate each candidate's potential to assume greater, more challenging responsibilities, the overriding factor being performance of assigned duties.

3.   The Coast Guard has assigned some candidates to special assignments outside of traditional career development patterns, e.g., institutional instructors, recruiting and equal opportunity billets.  In addition, other utilization policies or practices, such as those based on statutory restrictions on the assignment of women, may have had an effect on career opportunities.   These assignments, though beneficial to the Coast Guard, may have precluded some candidates from serving on traditional career development assignments. Such assignment practices should not prejudice the selection of these candidates for selection.   Successful performance of assigned duties is the key in measuring a candidate's potential for selection. Accordingly, in determining the qualification for selection of any candidate that has been affected by such utilization policies or practices, duty performed well in such assignments should be given weight equal to duty performed well by a candidate not affected by such policies or practices.

4.   This guidance should not be interpreted as requiring or permitting preferential treatment of any candidate or group of candidates on the grounds of race, religion, color, gender, or national origin.

# **SCREENING PANEL REPORTS**

1. The record of the screening panel's proceedings shall be compiled by the recorder, assistant recorder, and administrative support personnel. The written report of the screening panel shall be signed by the panel president, the panel members, the panel recorder, and the assistant panel recorder. It shall contain, separately, an alphabetical listing of the names of the Career Retention Screening Panel (CRSP) candidates identified for retention and those identified for involuntary retirement with appropriate selection statistics as well as the following items:

    a. All instructions, information, and guidance that were provided to the panel.

    b. Certification that:

        (1) To the best of your knowledge, the panel complied with all instructions contained in the precept and, as appropriate, other memorandums of guidance or instruction provided by me;

        (2) You were not subject to or aware of any censure, reprimand, or admonishment about the recommendations of the screening panel or the exercise of any lawful function within the authorized discretion of the panel;

        (3) You were not subject to or aware of any attempt to coerce or influence improperly any action in the formulation of the panel's recommendations;

        (4) You were not party to or aware of any attempt at unauthorized communications;

        (5) To the best of your knowledge, the screening panel carefully considered the records of each candidate whose name was furnished to the panel;

        (6) The CRSP candidates identified for retention are, in the opinion of at least two-thirds of the members of the panel, fully qualified for retention to meet the needs of the Coast Guard among those candidates whose names were furnished to the panel;

        (7) You are aware that the names of those identified for retention will not be released to the public after the panel report is approved, but each individual approved for continued service will be notified in writing by EPM following the notification of those identified for involuntary retirement, and you know that you may not disclose the recommended selectees;

        (8) You are aware that the names of those identified for involuntary retirement will not be released to the public, but that each individual will be notified privately of their selection for involuntary retirement by their chain of command, after the panel report is approved, and you know that you may not disclose the names of those recommended for retention; and

---

(9) You understand that, except as authorized by Coast Guard Regulations you may never disclose the proceedings and deliberations of the screening panel to any person who is not a panel member, recorder, or assistant recorder.

c. A list of all candidates eligible for consideration.

d. Precept.

2. The screening panel report shall be forwarded for approval to me via the Chief, Enlisted Personnel Management, Coast Guard Personnel Service Center.

Enclosure (4)

DA45                                    **AR 80**

# OATHS

1. Chief, Enlisted Personnel Management Division shall administer the following oath or affirmation to, the Chief, Enlisted Advancements and Separations Branch:

> *"Do you, solemnly swear (or affirm) that you will keep a true record of the proceedings of this screening panel, and you will not divulge the proceedings of this panel except as authorized or required by the Commander, Coast Guard Personnel Service Center (CG PSC) or higher authority, so help you God?"*

2. Chief, Enlisted Advancements and Separations Branch shall then administer the following oath or affirmation to the Career Retention Screening Panel, panel recorder, and assistant panel recorder:

> *"Do you, and each of you, solemnly swear (or affirm) that you will perform your duties as a member of the screening panel without prejudice or partiality, having in view both the special fitness of candidates and the efficiency of the United States Coast Guard, and you will not divulge the proceedings of this panel except as authorized or required by the Commander, Coast Guard Personnel Service Center (CG PSC) or higher authority, so help you God?"*

3. The recorder or assistant recorder shall then administer the following oath or affirmation to the other support personnel:

> *"Do you, and each of you, solemnly swear (or affirm) that you will not divulge the proceedings of this screening panel except as authorized or required by the Command, Coast Guard Personnel Service Center (CG PSC) or higher authority, so help you God?"*

**AR 81**

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commandant
United States Coast Guard

2100 Second Street, S.W.
Washington, DC 20593-7000
Staff Symbol: CCG
Phone: (202) 372-4411
Fax: (202) 372-4960

1040
DEC 0 5 2012

MEMORANDUM FOR:    Janet Napolitano
                   Secretary

FROM:              Admiral R. J. Papp, Jr.
                   Commandant; (202) 372-4411

SUBJECT:           COAST GUARD ACTIVE DUTY ENLISTED CAREER
                   RETENTION SCREENING PANEL AUTHORIZATION
                   REQUEST FOR 2013

I request approval for the Coast Guard to hold an Active Duty Enlisted Career Retention
Screening Panel (CRSP) in 2013. The Coast Guard held three panels with your approval in
2010, 2011 and 2012.

The 2012 panel considered 677 retirement eligible candidates and selected 147 for involuntary
retirement by the end of calendar year 2013. These retirements will allow continued accessions
and advancements that are essential for a healthy enlisted workforce.

I have determined that holding another panel in 2013 is in the best interest of the Coast Guard.
CRSP is designed to strategically rebalance the enlisted force toward a more upwardly mobile,
performance based demographic. Relatively stagnant military end-strength and lower than
normal attrition rates continue to result in lower than normal accession forecasts. These
dynamics jeopardize the future military workforce of the Coast Guard by slowing the
advancement of the Coast Guard's most high performing senior enlisted members.

Those not selected for continued service will be involuntarily retired. Members identified for
involuntary retirement will be entitled to full retirement benefits. The legal authority to conduct
a CRSP panel derives from title 10, U. S. Code Section 1169 and title 14, U.S. Code Section 357
(j). Under Section 1169, regular enlisted members of an armed force may be discharged, before
service term expiration, as the Secretary concerned may prescribe. Under Section 357 (j), the
Secretary of Homeland Security may authorize involuntary retirements without action by
Enlisted Personnel Boards pursuant to a "reduction in force." In order to avoid creating
confusion in the fleet, the CRSP process does not include the term "reduction in force," which
has specific meanings in other statutory contexts, because title 14 does not define, directly or by
reference, "reduction in force."

As previously indicated, I plan to establish the panel as an annual performance and conduct tool
to ensure we retain the best of our retirement eligible senior enlisted personnel. I have requested

**AR 86**

Subj:  COAST GUARD ACTIVE DUTY ENLISTED CAREER RETENTION      1040
       SCREENING PANEL AUTHORIZATION REQUEST FOR 2013

a delegation of authority from you to provide the Coast Guard with the permanent authority to
hold this panel when needed.  While the permanent authority is awaiting your consideration, I
request your approval to hold the panel in 2013.  If approved, the panel will only review enlisted
Coast Guard members who are retirement eligible within the panel-directed involuntary
retirement timeframe.

Your endorsement of this memo will provide the Coast Guard with the legal authority required to
conduct the CRSP during 2013.

Approve/date _____  12·19·12      Disapprove/date _____

Modify/date _____       Needs discussion/date _____

**AR 87**

**U.S. Department of
Homeland Security**

**United States
Coast Guard**

Commander
United States Coast Guard
Personnel Service Center

Mail Stop 7200
4200 Wilson Boulevard, Suite 1100
Arlington, VA 20598-7200
Staff Symbol: PSC-c
Phone: (202) 493-1901
Fax: (202) 493-1218

1040

MAY 0 8 2013

# MEMORANDUM

From:   D. R. Callahan, RDML
        CG PSC

To:     B. Kerr, CAPT

Subj:   PRECEPT CONVENING THE PANEL FOR SCREENING OF ACTIVE DUTY
        ENLISTED PERSONNEL FOR THE 2013 CAREER RETENTION SCREENING
        PANEL (CRSP)

Ref:    (a) COMDT COGARD Washington DC 191443Z Dec 12/ALCOAST 531/12
        (b) COMCOGARD PSC Arlington VA 141519Z Jan 13/ALCGENL 008/13

1.  A Career Retention Screening Panel (CRSP) is hereby appointed consisting of yourself, as
President, and the following members:

CDR Beth Naff                          Non-voting member:
CDR Adrian West                        MCPOCG M. Leavitt



Primary Clerical Assistance:           Non-voting Recorders:



2.  The panel shall convene at 0900, 17 June 2013, in the Richard D. Bowman board room, 5th floor,
Coast Guard Personnel Service Center, or as soon thereafter as practicable, for the purpose of
considering enlisted members for continued service in the United States Coast Guard.  Members of
the board shall swear or affirm that they will, without prejudice or partiality, and having in view
both the special fitness of the candidates and efficiency of the Coast Guard, perform the duties
imposed upon them, and that they will not disclose their proceedings of this panel to any person not
a member of the panel. The prescribed uniform for members of the panel is Tropical Blue.

Subj: PRECEPT CONVENING THE PANEL FOR SCREENING    1040
OF ACTIVE DUTY ENLISTED PERSONNEL FOR THE 2013
CAREER RETENTION SCREENING PANEL (CRSP)    MAY 0 8 2013

3.  The panel shall consider all eligible enlisted personnel who were not reviewed by the 2011 or 2012 CRSP and who meet the following criteria:

    A. All E-6 and below with 19.5 or more years of active military service as of 1 June 2013.

    B. All E-7 and above with 19.5 or more years of active military service who have three or more years time in grade as of 1 June 2013.

Members with approved retirement letters, and those at or above the cut for advancement on the May and November 2012 SWE eligibility list as of 1 June 2013 or above the cut for promotion to Chief Warrant Officer have been excluded from the panel process. Chief, Enlisted Personnel Management Division will provide you with a list of those individuals included in the candidate pool.

4.  The 2013 CRSP will use a ***performance and conduct based methodology*** that focuses on leadership, accomplishment, performance, conduct, professional skills, professional growth, and adherence to our Core Values to retain those members that best meet the high standards required in our enlisted service, as enumerated in enclosure (1). **You may discount minor errors, based on how recently they occurred, and as long as subsequent performance reflects lessons learned.** Accordingly, you are not bound by any opportunity of selection when selecting a candidate for retention.

5.  Diversity is vital to mission relevance, readiness, and execution. Diversity of talent, ability, ideas and viewpoints – as well as ethnicity, gender, culture, color and creed are critical in a Service that represents our employers: the American people. Accordingly, this guidance does not require or permit the preferential treatment of any enlisted member or group of enlisted members based on race, religion, color, gender or national origin.

6.  You should emphasize to the members of the Panel the importance of their obligation to confine themselves to facts of record and not predicate judgments on rumor or hearsay. At the end of your deliberations, all members must be able to say that the enlisted members recommended for continued service are, in the opinion of at least two-thirds of the members of the Panel, those shipmates whose continued service is considered to be in the best interest of the Coast Guard.

7.  The panel will be provided with the necessary records and clerical assistance by ███████ ████████ and ███████████████████ of the Enlisted Advancements and Separations Branch. Both will be available at all times to assist you. Furthermore, Chief, Enlisted Advancements and Separations Branch will be available to address any concerns or issues that may arise during the panel discussions. Upon completion of your deliberations, deliver your report to Chief, Enlisted Personnel Management Division.

8.  The Panel shall submit a report in writing signed by all members of the Panel. Except for the report of this Panel, the proceedings of the Panel shall not be disclosed to any persons not a member of the Panel. You will direct members of the Panel that their recommendations shall be kept confidential until the Assistant Commandant for Human Resources, CG-1, approves the report on behalf of the Commandant, and the 2013 CRSP candidates have been notified of the panel recommendations.

                                                                #

Enclosure:    (1) Selection Standard

**2013 CAREER RETENTION SCREENING PANEL SELECTION STANDARDS**

1.   The 2013 Career Retention Screening Panel (CRSP) shall consider carefully, without prejudice or partiality, the record of every eligible CRSP candidate. *The candidates identified for retention will be those shipmates whose continued service is considered to be in the best interest of the Coast Guard by a two-thirds majority of the members of the panel.*

2. The 2013 CRSP will use a *performance and conduct based methodology* that focuses on leadership, accomplishment, performance, conduct, professional skills, professional growth, and adherence to our Core Values to retain those members that best meet the high standards required in our enlisted service.

3.  Period of Review:

   For E-6 and below:  The 2013 CRSP waiver panel will evaluate the member's record for the previous **seven years** or since advancement to current pay-grade, whichever is longest.

   For E-7, E-8 and E-9:  The 2013 CRSP waiver panel will evaluate the member's record for the previous **seven years** or since advancement to E-7, whichever is longest.

**Performance and Conduct**

The following *Performance and Conduct based* considerations should guide your recommendations.

   a.  Substandard performance of duty to include receipt of a "not recommended" for advancement based on loss of recommendation, performance probation or incompetency, an unsatisfactory conduct mark, and/or declining performance with the same approving official in the rating chain;

   b. Receipt of an Enlisted Evaluation Report (EER) with a minimum average characteristic marks of 3.5 or below;

   c. Moral or professional dereliction, such as Relief for Cause, removal from primary duties;

   d. Failure to meet service norms or regulations concerning alcohol abuse including, but not limited to, documented instances or conviction(s) for operating a vehicle, or any other mode of transportation under the influence of alcohol or controlled substances during the period of review;

   e. Any documented instances of sexual assault and/or harassment;

   f. Have no conviction(s) by a civil court for any felony offense, or any finding by a civil court tantamount to a felony conviction, during the period of review;

Enclosure (1)

DA51                                                                      **AR 116**

g. Other documented adverse information clearly indicating that the CRSP candidate's continuation may be inconsistent with national security interest or may otherwise not be in the best interest of the Coast Guard, such as revocation of security clearance;

h. Financial irresponsibility; such as failure to pay just debts or a pattern of Government Credit Card delinquency/permanent revocation of the Government Credit Card due to misuse or failure to pay outstanding balance;

i. A candidate on performance probation who does not demonstrate progress during the probationary period in overcoming the deficiency, inability to maintain qualifications or recertify;

j. Failure to demonstrate upward mobility/professional development and growth to include:

(1) Consistent participation in SWE
(2) Completion of EPME and other advancement eligibility requirements (e.g., EOCTs, sea time, qualifications/certifications, physical fitness standards, etc...)
(3) Completion of OIC certifications
(4) Graduation from the USCG CPO Academy, USN Senior Enlisted Academy or USAF Senior Non-commissioned Officer Academy
(5) Positions of increased leadership/responsibility

k. Have more than three weight probationary periods during current period of review, or currently on weight probation.

**U.S. Department of
Homeland Security**

**United States
Coast Guard**



Commandant
United States Coast Guard

2703 Martin Luther King Jr. Ave SE
Washington, DC 20593-7000
Staff Symbol: CCG
Phone: (202) 372-4411
Fax: (202) 372-8302

1040

JAN 22 2014

MEMORANDUM FOR:     Jeh Charles Johnson
                    Secretary of Homeland Security

FROM:               Admiral R. J. Papp, Jr.
                    Commandant; (202) 372-4411

SUBJECT:            COAST GUARD ACTIVE DUTY ENLISTED CAREER
                    RETENTION SCREENING PANEL AUTHORIZATION
                    REQUEST FOR 2014

Purpose

I request approval for the Coast Guard to hold an Active Duty Enlisted Career Retention
Screening Panel (CRSP) in 2014. The Coast Guard held four panels with S-1 approval in 2010,
2011, 2012, and 2013.

Background

The 2013 panel considered 399 retirement eligible candidates and selected 194 for involuntary
retirement by 01 September 2014. These retirements will allow continued accessions and
advancements that are essential for a healthy enlisted workforce.

Discussion

I have determined that holding another panel in 2014 is in the best interest of the Coast Guard.
CRSP is designed to strategically rebalance the enlisted force toward a more upwardly mobile,
performance based demographic. Relatively stagnant military end-strength and lower than
normal attrition rates continue to result in lower than normal accession forecasts. These
dynamics jeopardize the future military workforce of the Coast Guard by slowing the
advancement of the Coast Guard's most high performing senior enlisted members.

Those not selected for continued service will be involuntarily retired. Members identified for
involuntary retirement will be entitled to full retirement benefits. The legal authority to conduct
a CRSP panel derives from title 10, U. S. Code Section 1169 and title 14, U.S. Code Section 357
(j). Under Section 1169, regular enlisted members of an armed force may be discharged, before
service term expiration, as the Secretary concerned may prescribe. Under Section 357 (j), the
Secretary of Homeland Security may authorize involuntary retirements without action by
Enlisted Personnel Boards pursuant to a "reduction in force." In order to avoid creating
confusion in the fleet, the CRSP process does not include the term "reduction in force."

**AR 128**

Subj:    COAST GUARD ACTIVE DUTY ENLISTED CAREER          1040
         RETENTION SCREENING PANEL AUTHORIZATION
         REQUEST FOR 2014

As previously indicated, I plan to establish the panel as an annual performance and conduct tool to ensure we retain the best of our retirement eligible senior enlisted personnel. I have requested a delegation of authority from you to provide the Coast Guard with the permanent authority to hold this panel when needed. While the permanent authority is awaiting your consideration, I request your approval to hold the panel in 2014. If approved, the panel will only review enlisted Coast Guard members who are retirement eligible within the panel-directed involuntary retirement timeframe.

Your endorsement of this memo will provide the Coast Guard with the legal authority required to conduct the CRSP during 2014.

Approve/date _____ 3/7 _____          Disapprove/date _____

Modify/date _____          Needs discussion/date _____

**U.S. Department of Homeland Security**

**United States Coast Guard**

Commander
United States Coast Guard
Personnel Service Center

Mail Stop 7200
4200 Wilson Boulevard, Suite 1100
Arlington, VA 20598-7200
Staff Symbol: PSC-c
Phone: (703) 872-6475
Fax: (703) 872-6473

1040
11 Mar 14

# MEMORANDUM

From:    D. R. Callahan, RDML
         CG PSC

To:      T. A. Tobiasz, CAPT

Subj:    PRECEPT CONVENING THE PANEL FOR SCREENING OF ACTIVE DUTY
         ENLISTED PERSONNEL FOR THE 2014 CAREER RETENTION SCREENING
         PANEL (CRSP)

Ref:     (a) COMDT COGARD Washington DC R292244Z Jan 14/ALCOAST 030, CG-1,
             COMDTNOTE 1000
         (b) COMCOGARD PSC Arlington VA R060048Z Feb 14/ALCGENL 016/14

1.  A Career Retention Screening Panel (CRSP) is hereby appointed consisting of yourself, as
President, and the following members:

   CDR Owen L. Gibbons, CG TRACEN Cape May
   CDR Kenneth E. Blair, CG Sector New Orleans
   ███████████ CG SFLC
   ███████████ CG-0952
   ███████████ PAC-00B
   ███████████ CGD Seven
   ███████████ CGD Five
   ███████████ CG-DCO

   MCPOCG Michael P. Leavitt, non-voting member

   Non-voting Recorders/Primary Clerical Assistance:



2.  The Panel shall convene at 0830, 17 March 2014, in the Richard D. Bowman Board Room, 5th
Floor, Coast Guard Personnel Service Center, or soon thereafter as practicable for the purpose of
considering enlisted members for continued service in the United States Coast Guard.  Members
of the panel shall swear or affirm that they will, without prejudice or partiality, and having in
view both the special qualifications of the candidates and efficiency of the Coast Guard, perform
the duties imposed upon them, and that they will not disclose proceedings of this Panel to any
person not a member of the Panel. The prescribed uniform for members of the Panel is Tropical
Blue.

3.  The Panel shall consider all eligible enlisted personnel who were not reviewed in the 2012 or
2013 Panels and who meet the following criteria: All E-7 and above with 19 or more years of

Subj:   PRECEPT CONVENING THE PANEL FOR          1040
          SCREENING OF ACTIVE DUTY ENLISTED     11 Mar 14
          PERSONNEL FOR THE 2014 CAREER RETENTION
          SCREENING PANEL (CRSP)

active military service who have three or more years time in grade as of 1 June 2014. Members with an EPM-1 approved retirement and members serving in the Musician rating have been excluded from the panel process. Chief, Enlisted Advancements and Separations Branch shall provide you with a list of those individuals included in the candidate pool.

4.   The 2014 CRSP will use a ***performance and conduct-based methodology*** that focuses on leadership, accomplishment, performance, conduct, professional skills, professional growth, and adherence to our Core Values to retain those members that best meet the high standards required in our enlisted service, as enumerated in enclosure (1). **You may discount minor errors, based on how recently they occurred, and as long as subsequent performance reflects lessons learned.** Accordingly, you are not bound by any opportunity of selection when selecting a candidate for retention.

5.   Diversity is vital to mission relevance, readiness and execution. Diversity of talent, ability, ideas and viewpoints – as well as ethnicity, gender, culture, color and creed are critical in a Service that represents our employers: the American people. Accordingly, this guidance does not require or permit the preferential treatment of any enlisted member or group of enlisted members based on race, religion, color, gender or origin.

6.   You should emphasize to the members of the Panel the importance of their obligation to confine themselves to facts of record and not predicate judgments on rumor or hearsay. At the end of your deliberations, all members must be able to say that the enlisted members recommended for continued service are, in the opinion of at least two-thirds of the members of the Panel, those shipmates whose continued service is considered to be in the best interest of the Coast Guard.

7.   The Panel will be provided with the necessary records and clerical assistance by ████████ ███████████████████████ and ██████████████████of the Enlisted Advancements and Separations Branch. They will be available at all times to assist you. Furthermore, Chief, Enlisted Advancements and Separations Branch will be available to address any concerns or issues that may arise during the Panel discussions. Upon completion of your deliberations, deliver your report to Chief, Enlisted Personnel Management Division.

8.   The Panel shall submit a report in writing signed by all members of the Panel. Except for the report of this Panel, the proceedings of the Panel shall not be disclosed to any persons not a member of the Panel. You will direct members of the Panel that their recommendations shall be kept confidential until the Assistant Commandant for Human Resources, CG-1, approves the report on behalf of the Commandant, and the 2014 CRSP candidates have been notified of the Panel recommendations.

#

Enclosure:    (1) Selection Standards

## 2014 CAREER RETENTION SCREENING PANEL SELECTION STANDARDS

1. The 2014 Career Retention Screening Panel (CRSP) shall consider carefully, without prejudice or partiality, the record of every eligible CRSP candidate. *The candidates identified for retention will be those shipmates whose continued service is considered to be in the best interest of the Coast Guard by a two-thirds majority of the members of the Panel.*

2. Period of Review:

   For E-7, E-8 and E-9: The 2014 CRSP will evaluate the member's record for the previous **seven years** or since advancement to E-7, whichever is longest.

3. The 2014 CRSP will use a performance and conduct-based methodology that focuses on leadership, accomplishment, performance, conduct, professional skills, professional growth, and adherence to our Core Values to retain those members that best meet the high standards required in our enlisted service.

4. The following *Performance and Conduct-based* considerations should guide your recommendations.

   a. Substandard performance of duty to include receipt of a "not recommended" for advancement based on loss of recommendation, performance probation or incompetency, an unsatisfactory conduct mark, and/or declining performance with the same approving official in the rating chain;

   b. Moral or professional dereliction, such as Relief for Cause, removal from primary duties;

   c. Failure to meet service norms or regulations concerning alcohol abuse including, but not limited to, documented instances or conviction(s) for operating a vehicle, or any other mode of transportation under the influence of alcohol or controlled substances during the period of review;

   d. Any documented instances of sexual assault and/or harassment;

   e. Conviction(s) by a civil court for any felony offense, or any finding by a civil court tantamount to a felony conviction, during the period of review;

   f. Other documented adverse information clearly indicating that the CRSP candidate's continuation may be inconsistent with national security interest or may otherwise not be in the best interest of the Coast Guard, such as revocation of security clearance;

   g. Financial irresponsibility; such as failure to pay just debts or a pattern of government travel charge card (GTCC) delinquency/permanent revocation of the GTCC due to misuse or failure to pay outstanding balance;

   h. A candidate on performance probation who does not demonstrate progress during the probationary period in overcoming the deficiency, inability to maintain qualifications or recertify;

   i. Failure to demonstrate upward mobility/professional development and growth to include:

      (1) Inconsistent participation in SWE
      (2) Noncompletion of EPME or other advancement eligibility requirements (e.g., EOCTs, sea time, qualifications/certifications, physical fitness standards, etc…)
      (3) Inability to obtain OIC certification

Enclosure (1)

(4) Nonattendance to the CG CPO Academy, USN Senior Enlisted Academy or USAF Senior Non-commissioned Officer Academy
(5) Lack of assignment to positions of increased leadership/responsibility

j.  Have more than three weight probationary periods during the current period of review, or currently on weight probation.

Note 1. Selection standard j shall be associated with some type of conduct or performance related issue.

Enclosure (1)

**AR 142**

**FLAG VOICE #446**
**2015 Active Duty Career Retention Screening Panel Pause**

I will soon release an ALCOAST announcing my decision not to hold an Active Duty Career Retention Screening Panel (CRSP) in 2015.  For the past five years, the Coast Guard has sought and received authorization from the Secretary of Homeland Security (DHS) to convene a CRSP in order to increase workforce flow,  address high retention issues through the involuntarily retirement of selected enlisted members, and to reduce the size of the retirement eligible enlisted workforce.   A performance and conduct-based panel, the CRSP ensured that the continued retention of our best and top-performing retirement eligible senior enlisted accompanied the reduction in the senior enlisted workforce.

The implementation of several workforce management tools since the CRSP's inception in 2010 have reduced the need for a 2015 CRSP to ensure healthy workforce flow.  These initiatives, which include the reactivation of high year tenure (HYT), ending indefinite reenlistments, and updating reenlistment standards have increased our overall ability to stabilize accessions, improve workforce upward flow, and retain our best enlisted personnel while separating those not eligible for reenlistment due to performance and conduct issues.

These workforce management tools emphasize continued adherence to the highest standards of performance and conduct and hold accountable members failing to maintain those standards. The lack of a CRSP in no way implies a reduced emphasis on performance and conduct. Moreover, the complete impact of these initiatives is yet to be fully evaluated and I feel it necessary for the enlisted workforce to adjust to these new policies.  This pause in 2015 will facilitate such adjustment by the enlisted workforce and allow the service the further evaluate the potential need to seek authority for CRSP in subsequent years.

Facing workforce flow challenges over the past four years as a result of high retention and stagnant advancements that hindered new accessions, the Reserve held their first CRSP in 2014 by authority delegated to the Commandant by the DHS Secretary. The R-CRSP, which will be held again in 2015, is designed to strategically rebalance the structure of the Reserve enlisted workforce and provide advancement opportunities for junior Reserve personnel.  By involuntary retiring select senior enlisted Reservists and retaining top-performing members, the overall reduction in retirement-eligible senior enlisted Reservists will ultimately restore desirable workforce flow. The potential need for the R-CRSP is re-evaluated every year based on the health of the workforce and needs of the service.

While this Flag Voice and accompanying ALCOAST address my decision not to pursue authorization for a CRSP in 2015, members who were not retained in a previous CRSP must still retire as directed.

RADM DAVE CALLAHAN
Assistant Commandant for Human Resources

R 122000Z FEB 15
FM COMDT COGARD WASHINGTON DC//CG-1//
TO ALCOAST
BT
UNCLAS //N01000//
ALCOAST 056/15
COMDTNOTE 1000
SUBJ: NO 2015 ACTIVE DUTY CAREER RETENTION SCREENING PANEL (CRSP)
1. For the past five years, the CG received authorization from the
Secretary of Homeland Security (DHS) to hold active duty Career
Retention Screening Panels (CRSP) to increase workforce flow and
address high retention issues.  Since the CRSP was initiated in 2010,
the CG implemented workforce management tools that increased our
ability to stabilize accessions, and regulate workforce flow.  These
include the reactivation of high year tenure (HYT), ending indefinite
reenlistments, and updating reenlistment standards. As a result of
these workforce shaping tools, current trends in workforce flow and
retention do not necessitate the Coast Guard seeking authorization
for a CRSP in 2015.
2. The recent implementation of these policies has required the
enlisted workforce to adjust to numerous new initiatives impacting
their careers.  By not seeking authority to conduct an active duty
CRSP in 2015, we will allow time for the enlisted workforce to
continue to adjust to recent policy changes.
3. I still intend to conduct a Reserve CRSP (R-CRSP) in 2015. 2014
was the Services first R-CRSP and the workforce flow generated by the
R-CRSP will continue to ensure a healthy Reserve force.
4. The CG will determine if there is a Service need to seek
authorization for an Active Duty CRSP in the future. If held,
affected members will receive notice well in advance of the panel
convening.
5. Members previously selected for involuntary retirement through the
CRSP are required to retire as directed.
6. Points of Contact:
    a. Questions regarding CRSP, HYT, and all other enlisted
separation issues should be directed to PSC-epm-1 at
ARL-PF-CGPSC-EPM-1-Separations(at)uscg.mil.
    b. Questions regarding military personnel policy should be
directed to COMDT (CG-1331) at HQS-PolicyandStandards(at)uscg.mil.
7.  RADM Dave Callahan, Assistant Commandant for Human Resources,
sends.
8.  Internet release authorized.
BT
NNNN

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| TONIA TIPPINS, *et al.*,<br><br>           Plaintiffs,<br><br>v.<br><br>THE UNITED STATES,<br><br>           Defendant. | )<br>)<br>)<br>)<br>)    No. 18-923C<br>)    Judge David A. Tapp<br>)<br>)<br>)<br>)<br>) |

## DECLARATION OF CHRISTOPHER P. CALHOUN

I, Christopher P. Calhoun, declare as follows:

1.       I previously served in the United States Coast Guard and retired in the rank of Captain.  I served as Chief, Office of Military Personnel (CG-122), from July 10, 2009, through August 14, 2011.

2.       As part of my duties and responsibilities in the CG-122 position, I was responsible for implementing the personnel policy decisions that were made by my superiors in the chain of command, which included Rear Admiral Ronald Hewitt and Admiral R.J. Papp, Jr., whereas, I personally did not have authority to make any policy decisions.  Accordingly, I participated in implementing the Coast Guard Active Duty Enlisted Career Retention Screening Panels (CRSPs) in 2010 and 2011, but I did not have authority to make any decisions with respect to these CRSPs.  I understand that there may have been additional CRSPs in 2012, 2013, and 2014, but I did not have any involvement with them.

3.       I have reviewed exhibits 9, 10, 11, and 14 to plaintiffs' motion for summary judgment that I understand were filed in this case.  In this declaration, I will refer to these documents by their exhibit number as designated by plaintiffs.

4.       Exhibit 10 is an email thread that includes an email that I drafted and sent on July 20, 2010 at approximately 11:14 a.m.  Exhibit 9 is an email thread that includes an email that I drafted and sent on July 20, 2010 at approximately 1:27 p.m.  At the time that I sent my emails in exhibits 9 and 10, we were in the planning stages for the 2010 CRSP, which at that point had not yet been authorized by the Secretary of the Department of Homeland Security (Secretary).  In my emails in exhibits 9 and 10, I sought to convey communications strategy (also known as messaging strategy).  By discussing in my emails in exhibits 9 and 10 issues related to workforce "flow," I sought to convey my understanding that workforce flow was the motivating purpose behind the proposed 2010 CRSP.  When I drafted my emails in exhibits 9 and 10, I understood that the proposed 2010 CRSP would not involve a reduction in the overall size of the workforce, and, instead, I understood that the proposed 2010 CRSP would involve a targeted reduction in force that addressed workforce flow issues by reducing only the number of retirement eligible

- Page 1 of 3 -

enlisted members on active duty. At the time when I drafted my emails in exhibits 9 and 10, I sometimes used the term, "RIF," in all capital letters, to refer to reductions in the overall size of the workforce, which was not consistent with my understanding of the purpose of the proposed 2010 CRSP to reduce only the number of retirement eligible enlisted members on active duty. This is all that I intended to communicate when I wrote "this is not a RIF" in exhibit 9 and "this is not a RIF tool" in exhibit 10. At the time I wrote my emails in exhibits 9 and 10, I was writing about communications strategy, not legal authority, because I understood at the time that the legal authority for the proposed 2010 CRSP would be as a reduction in force under 14 U.S.C. § 357(j), and I never intended for my emails to suggest that the proposed 2010 CRSP would not be a reduction in force under 14 U.S.C. § 357(j).

5.      In my email in exhibit 9, I directed the generation of some answers to frequently asked questions (or FAQs) regarding the proposed 2010 CRSP, which was part of a communications strategy. I also supervised and participated in the drafting of FAQs regarding the 2010 CRSP, which subsequently was approved by the Secretary in September 2010. It appears that Exhibit 11 is the final version of those FAQs, which were posted online for review by members of the fleet sometime near the end of 2010.

6.      The FAQs in exhibit 11 address questions of both legal authority and communications strategy. For example, in the answer to FAQ number 1, I sought to communicate that the 2010 CRSP was a reduction in force under 14 U.S.C. § 357(j), and that legal authority for the 2010 CRSP is mentioned several times and the term "reduction in force" is used as well. Likewise, in the answers to FAQ numbers 1 and 4, I sought to communicate that enlisted personnel boards would not be conducted in accordance with 14 U.S.C. § 357(a)-(i) because the 2010 CRSP was being convened pursuant to Secretary's authority under 14 U.S.C. § 357(j). But, in the answer to FAQ number 2, I sought to communicate my understanding of why the 2010 CRSP authorization memorandum signed by the Secretary did not use the term "reduction in force." At the time when I supervised and participated in the drafting of the FAQs, I sought to convey that the 2010 CRSP was not intended to achieve reductions in the overall size of the workforce, and, instead, that the 2010 CRSP was intended to achieve a targeted reduction in force that addressed workforce flow issues by reducing only the number of retirement eligible enlisted members on active duty. This is all that I intended to communicate when FAQ number 2 says, "[t]he term 'reduction in force' would have been misleading because the CRSP was not intended to reduce the overall size of the force," because "[t]he CRSP was convened to efficiently and fairly, based on uniform performance and conduct criteria, identify retirement eligible enlisted personnel for involuntary retirement; accelerate advancement of junior enlisted members; and reinvigorate accession of recruits into the Coast Guard." Exhibit 11. The answer to FAQ number 3 further elaborated on my understanding of the reasons why the 2010 CRSP was necessary. At the time when I supervised and participated in the drafting of the FAQs, I understood that the legal authority for the 2010 CRSP was as a reduction in force under 14 U.S.C. § 357(j), and I never intended for the FAQs to suggest that the proposed 2010 CRSP would not be a reduction in force under 14 U.S.C. § 357(j).

7.      I supervised and participated in drafting the FAQs in exhibit 11 in the December 2010 timeframe. Exhibit 14 is an email thread that includes an email that I drafted and sent on December 29, 2010 at approximately 9:13 a.m. The email thread in exhibit 14 pertains to the drafting of the FAQs.

- Page 2 of 3 -

8.      Unlike the 2010 CRSP authorization memorandum signed by the Secretary, which did not use the term "reduction in force," the 2011 CRSP authorization memorandum signed by the Secretary did use the term "reduction in force." My understanding is that this change occurred solely because of a shift in the Coast Guard's communications strategy, and not because of any change in the legal authority for the CRSPs. During the entire time when I was involved with the 2010 and 2011 CRSPs, I understood that the legal authority for the 2010 and 2011 CRSPs was as a reduction in force under 14 U.S.C. § 357(j), and no one ever told me that the 2010 or 2011 CRSPs were not a reduction in force under 14 U.S.C. § 357(j).

9.      I have personal knowledge of the facts in this declaration.

I declare under penalty of perjury that the foregoing is true and correct pursuant to 28 U.S.C. § 1746. Executed on this 28th day of January, 2021.

Captain Christopher P. Calhoun (Ret.)